**Ernest R. BUNCH, Petitioner,**

v.

**STATE of Tennessee, Defendant.**

Supreme Court of Tennessee.

Sept. 4, 1973.

Robert W. Ritchie, Knoxville, for petitioner.

David M. Pack, Atty. Gen., Bart C. Durham, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, Walter E. Fischer, Asst. Dist. Atty. Gen., Clinton, for defendant.

## OPINION

DYER, Chief Justice.

This case comes to this Court on the grant of the writ of certiorari directed to the Court of Criminal Appeals.

Ernest R. Bunch, referred to herein as defendant, was convicted of second degree murder, receiving a sentence of ten years in the State Penitentiary. The indictment charged defendant, under the influence of an intoxicant or drug, while driving his automobile on the public highway ran into the rear of an automobile driven by Ben Barrington, resulting in the death of Gene A. Tipton, Jr., a passenger in the Barrington automobile. The Court of Criminal Appeals has correctly summarized the evidence as follows:

About 9:30 p. m., on September 20, 1970, Benjamin Barrington, accompanied by Gene A. Tipton, Jr., was driving between Oak Ridge and Clinton and overtook and passed a slow-moving Chevrolet. After passing the Chevrolet, Barrington noticed that its lights were being turned off and on and when they were turned off the driver would pull up closer to the rear of Barrington's vehicle "and then when they would come back on he would back off a little bit." That happened a couple of times. Then, after entering the Clinton city limits, "he kept doing it again and getting closer" and turned his lights off and rammed the rear of Barrington's car causing it to career off the highway and turn over. Tipton was fatally injured. Barrington was temporarily knocked out and after he regained consciousness and was lying on the ground waiting for the ambulance, a man who smelled of alcohol knelt beside him and said, "I'm the person that hit you. My name is Bunch. When the police get here, tell them that I was the one that hit you. Tell them the truth." He could not recognize the man, did not know his voice from any prior experience and could not say that it was the defendant. As far as he could recall, he did not apply his brakes. There were no skid marks.

When the highway patrolman arrived shortly after the accident, he saw the defendant there in an intoxicated condition. Barrington's car was in a residential yard where it had come to rest after apparently rolling over two or three times, and had fresh dents and scrape marks on the rear fender and bumper. The defendant's Chevrolet automobile was parked on the opposite side of the road with fresh damage to the right bumper guard and parking light. Empty and full beer cans were found in it. The patrolman arrested him for operating a motor vehicle while under the influence of an intoxicant. Bunch agreed to submit to an alcohol-blood test after being advised that he was not required to do so, and the patrolman and a policeman took him to the Oak Ridge hospital where he signed a form stating that he consented to the test. A technician withdrew some blood from Bunch and he was then taken to the Anderson County jail.

Testifying in his own behalf, the defendant said that he saw a car pass him and then saw its brake lights come on and it then ran along the shoulder of the road and wrecked. He denied turning his lights off and on and denied hitting Barrington's car. He said that he turned around and drove back to the scene to see if he could be of help; that the police arrived approximately fifteen minutes later; as he followed the car he was never closer to it than a car length and that was just about the time it wrecked; that there was no other car between his and the wrecked one after it passed him; that he had one beer about 8:00 o'clock that morning and another that night just before he started driving toward Clinton and felt no effects of it; that the damage to the front end of his car occurred when he hit a ditch the day before this accident; that between 9:00 and 10:00 o'clock that morning he took Luther "Mutt" Kennedy to a market where Kennedy bought some beer and that Kennedy drank a few beers and left the remainder in his car; that he guessed there were four or five empty beer cans in his car but

didn't know where they came from or how many beers Kennedy drank. He was not asked whether he talked to Barrington at the scene or whether he consented to an alcohol-blood test.

Defense witness Bobby Evans, in front of whose home the wreck occurred and who went to the scene immediately, testified he did not hear a collision, "Not a collision, just kind of a rolling, crumbling noice," "a kind of a grabbing wheels" like somebody was applying brakes; that the defendant did not talk to Barrington but did "get down and check the Tipton boy." But on cross-examination he said the defendant appeared to be nervous and that "He was down over the boys like it hurt him." He said that Barrington told him someone hit him and that his lights had been giving him trouble between Oak Ridge and Clinton, but when pressed on cross-examination he said that Barrington said, "his lights" were giving trouble and that he did not know who Barrington had reference to by "his lights." On re-direct examination his attorney asked him whether Barrington said "my" lights or "his" lights and he reiterated that Barrington used the pronoun "his."

An Oliver Springs policeman testified that he saw damage to the defendant's fender and front parking light the day before the fatal accident. Charlie White, another defense witness, testified that he saw the defendant's car during the afternoon before the accident and that the right front fender was bent slightly and the bumper guard was loose, and that the car was in the same condition the day after the accident when he was asked to take a picture of it. Another defense witness, Charlie Seiber, said that he helped the defendant change a flat tire in the afternoon of the same day the accident occurred, and that his bumper guard was "leaning" and his right signal light was broken out. Woody Joe Duncan said that he talked to the defendant at his service station between 9:00 and 10:00 the night of the accident and that his right front parking light was broken and the front of his car was muddy. Luther Kennedy said he got the defendant to take him to market that morning and that he bought two eight-packs of beer, and drank two beers in the car and one at a table in the park and that he left the remainder of it in the defendant's car upon leaving him at the park.

■ The Court of Criminal Appeals, by a unanimous opinion has reversed and remanded for a new trial, on the ground the conviction rests entirely on circumstantial evidence and the failure of the trial judge to charge the law governing circumstantial evidence was such a fundamental error as requiring reversal.

On this point we agree. The critical issue here is whether defendant drove his automobile into the rear of the Barrington automobile, causing it to turn over, or whether the Barrington automobile turned over when driven on the shoulder of the road without being struck by defendant's automobile. On this critical point the State offers only circumstantial evidence and even though the circumstantial evidence offered by the State, accepted by the jury, will strongly support the conviction, such does not relieve the trial court of its duty to properly and fully charge the law as to circumstantial evidence. Bishop v. State, 199 Tenn. 428, 287 S.W.2d 49 (1956); Monts v. State, 214 Tenn. 171, 379 S.W.2d 34 (1964).

■ Error was assigned to the admission of the testimony of an Oak Ridge Methodist Hospital technologist who tested defendant's blood for alcohol content and testified as to the results. The Court of Criminal Appeals, by majority opinion, sustained this assignment on the ground the test did not conform to the requirements of T.C.A. § 59–1049.

**4**

The Legislature, by Chapter 292, Public Acts of 1969, enacted a statutory scheme whereby, among other things, law enforcement officers could obtain blood samples from persons using public highways when the officers had reasonable ground to believe the person to have been driving under the influence of an intoxicant or drug, with a right to have the results of the test so conducted entered in evidence against such person in a criminal trial. This Act was codified as T.C.A. §§ 59–1044 to 59–1051.

The majority opinion of the Court of Criminal Appeals noted § 59–1049 required blood samples taken pursuant to this statute to be forwarded to the office of Chief Medical Examiner for examination and analysis and a certificate of the results duly attested could be admitted in any criminal proceedings as evidence of the facts stated therein. The majority then held since the blood sample taken from defendant was not processed in accordance with this statute, then the results of the test could not be admitted in evidence.

We agree, as pointed out in the minority opinion of the Court of Criminal Appeals on this issue, the effect of this holding is to make the method prescribed by this statute in regard to the introduction in evidence of results of blood test for intoxicant or drugs the exclusive method. We find nothing in this statute to support such a holding. The method required by this statute is supplementary to procedures for the introduction of such evidence now in use throughout the State.

The case is remanded for a new trial.

CHATTIN, HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.