STATE of Missouri, Respondent,

v.

Thomas William LASLEY, Appellant.

No. 60897.

Supreme Court of Missouri,
En Banc.

June 27, 1979.

Rehearing Denied July 17, 1979.

Robert A. Cosentino, Asst. Public Defender, 21st Judicial Circuit, St. Louis County, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

Robert Popper, Willard B. Bunch, David B. Dysart, Kansas City, Gerald M. Handley, Kansas City, for amicus curiae.

WELLIVER, Judge.

Appellant was convicted of burglary, second degree and stealing, § 560.110, RSMo 1969, in the Circuit Court, County of St. Louis. He was sentenced to a prison term of eight years for the burglary and five years for the stealing offense, the two terms to run concurrently. By opinion filed June 13, 1978, the Missouri Court of Appeals, St. Louis District, Division I, reversed the judgment of conviction.

We ordered transfer to this court to determine the question of whether we should overrule the long-established precedent of requiring the giving of the circumstantial evidence instruction[1] in certain criminal cases. We decide the case as though received on direct appeal. Mo.Const. art. V, § 10; Rule 83.09. In so doing, we utilize without quotation marks substantial portions of the opinion of the Court of Appeals. (McMillian, J.) We reverse the trial court.

On May 26, 1976, at 8:00 a. m., Mr. Ronald Danna left his home in Babler Woods Subdivision in west St. Louis County after securely locking the premises. At approxi-

1. MAI–Cr. 3.42.

mately 9:40 a. m., St. Louis County Police Detectives William Hines and Richard Wilhelm, conducting mobile surveillance of the Babler Woods area in unmarked police cars, noticed the appellant in a carryall van parked at Highway 109 and Babler Woods Drive. A dark blue Buick was also stopped at this point. The detectives saw appellant get out of the van, open the hood and stand to the side of the vehicle. Detective Wilhelm saw the driver and passenger of the Buick walk to where the appellant was standing, briefly engage him in conversation, and return to the Buick. The Buick then drove into Babler Woods Subdivision. Appellant stood by the van for three to five minutes "just kind of looking up and down the highway." He then closed the hood and drove the van into Babler Woods Drive. About twenty minutes later, Detective Hines drove down Babler Woods Drive to see where the two vehicles had gone. As Detective Hines passed Mr. Danna's house, which cannot be seen from the road, he saw the Buick and the van driving out of Mr. Danna's driveway. He noticed that the driver of the Buick was wearing gloves. Detective Hines and Detective Wilhelm, in separate cars, followed the two vehicles out of the subdivision and down Highway 109 to the driveway to the house at 808 Pond Road, where both vehicles stopped and parked. The occupants of the Buick again approached the appellant and spoke to him. The Buick then pulled into the driveway and the van remained parked beside the roadway. The appellant raised the hood of the van and stood in front of it looking down the road. In the interim, Detective Hines radioed fellow Detective Stewart and instructed him to ascertain whether the Danna residence had been burglarized. When the two vehicles proceeded south on Pond Road, Detective Hines radioed for assistance from a marked police car to stop the vehicles for questioning. Patrolman Corless responded and with the aid of Detectives Hines and Wilhelm stopped the two vehicles. Both appellant and the driver of the Buick were asked to produce identification. Detective Wilhelm looked in the window of the van and saw a television

antenna protruding from beneath a blanket. Meanwhile, Detective Stewart radioed Detective Hines and informed him that there had been a break-in at the Danna residence, the house had been "ransacked," and a television appeared to have been taken. Detective Hines informed Wilhelm and Corless of the break-in, and they placed the appellant under arrest. The appellant was not arrested prior to Detective Stewart's radio transmission. Police thereafter searched the appellant's van and seized certain items, including a blanket and television, later identified by Mr. Danna as among goods taken from his house.

On appeal, appellant raises three points: that the trial court erred (1) in failing to give the "circumstantial evidence" instruction; (2) in failing to declare a mistrial after the prosecutor commented on the lack of a driver's license in appellant's possession at the time of his arrest; and (3) in failing to suppress the items seized from the appellant's van on the ground that there was no reason to stop the appellant and search his vehicle.

■ We first consider the appellant's argument that the trial court erred in not giving MAI–Cr 3.42, the "circumstantial evidence" instruction, which reads as follows:

Circumstantial evidence is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

You should not find the defendant guilty unless the facts and circumstances proved are consistent with each other and the guilt of the defendant, and inconsistent with any reasonable theory of his innocence.

The second paragraph of the instruction is variously referred to as a "reasonable hypothesis" or "multiple hypothesis" or "negative-exclusion" instruction.

The notes on the use of MAI–Cr 3.42 state that the trial judge is required to give

the instruction if the evidence in a case is wholly circumstantial and the defendant properly requests the instruction under Rule 20.02. *See State v. Hoskins,* 515 S.W.2d 502, 503 (Mo.1974); *State v. Regazzi,* 379 S.W.2d 575, 579 (Mo.1974) (per curiam).

The respondent does not question that settled Missouri law requires that (if properly requested) MAI–Cr 3.42 be given if the evidence in a case is wholly circumstantial. Instead, the respondent requests that this court abrogate MAI–Cr 3.42 and adopt the federal rule as stated in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), *rehearing denied* 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731.

In *Holland,* the defendants were convicted of income tax evasion under § 145 of the Internal Revenue Code. The defendants argued that since the evidence was circumstantial, the trial judge should have given an instruction stating that where the government's evidence is circumstantial it must exclude every reasonable hypothesis other than that of guilt. Mr. Justice Clark, speaking for a unanimous court, upheld the trial judge's refusal to give a "reasonable hypothesis" instruction, stating that "the better rule is that *where the jury is properly instructed on the standards for reasonable doubt,* such an additional instruction on circumstantial evidence is confusing and incorrect." 348 U.S. at 139–40, 75 S.Ct. at 137 (emphasis added). The trial judge in *Holland* had defined "reasonable doubt" as "the kind of doubt . . . which you folks in the more serious and important affairs of your own lives might be willing to act upon." *Id.* at 140, 75 S.Ct. at 138. While the Court indicated that "reasonable doubt" might better have been defined as the kind of doubt that would cause a person

to hesitate to act rather than to be willing to act, the Court concluded that on the whole, the instruction correctly conveyed the meaning of the phrase.[2]

Mr. Justice Clark required as a condition precedent to dispensing with the reasonable hypothesis instruction that the jury be properly instructed on the standards for reasonable doubt. It is this condition precedent which causes the problem for Missouri courts. The law in Missouri is well-settled that a judge may not comment upon the phrase "reasonable doubt" and the notes on the use of MAI–Cr 2.20 forbid a trial judge from giving any other instruction that elaborates on, or attempts to define, "reasonable doubt." *State v. Amerson,* 518 S.W.2d 29, 32 (Mo.1975); *State v. Taylor,* 486 S.W.2d 239, 244 (Mo.1972); *State v. Lafferty,* 416 S.W.2d 157, 161 (Mo.1967).

Respondent seeks to harmonize the requirement of *Holland* and existing Missouri law. Respondent's Supplemental Brief at 11 states that "the overwhelming majority of jurisdictions when confronted with the issue [whether the reasonable hypothesis instruction should be abrogated] have decided to excise the 'reasonable hypothesis' instruction." Unlike Missouri, most of the jurisdictions cited by respondent permit jury instructions to define the phrase "reasonable doubt." Most of the cases from other jurisdictions cited by the respondent indicate that some sort of elaboration on the phrase "reasonable doubt" was made at the trial level, and hedge the abrogation of the circumstantial evidence instruction with the qualification that it is not needed where the jury is adequately instructed on the standards for reasonable doubt. *State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680, 684, 686 (banc 1975); *State v. Jackson,* 331 A.2d

**2.** We note that the customary practice in federal courts is to submit a definition of reasonable doubt in instructions to the jury in a criminal trial:

> It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act.

> Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.

1 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 11.14 (3rd Ed. 1977). *See, e. g., United States v. Conley,* 523 F.2d 650, 655 (8th Cir. 1975), *cert. denied* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976).

361, 365 (Me.1975); *State v. Draves,* 18 Or. App. 248, 524 P.2d 1225, 1227 n. 1 (1974); *State v. Wilkins,* 215 Kan. 145, 523 P.2d 728, 735 (1974); *Murray v. State,* 249 Ark. 887, 462 S.W.2d 438, 442–43 (1971); *State v. Harvill,* 106 Ariz. 386, 476 P.2d 841, 846 (banc 1970); *Allen v. State,* 420 P.2d 465, 468 (Alaska 1966). *See also Henry v. State,* 298 A.2d 327, 330 (Del.1972); *Vincze v. State,* 86 Nev. 546, 472 P.2d 936, 938 (1970); *State v. Fiorello,* 36 N.J. 80, 88 n. 1, 174 A.2d 900, 904 n. 1 (1961), *cert. denied* 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962). The majority of states currently use a circumstantial evidence instruction, including twelve jurisdictions in which, within the last decade, the state supreme court has reaffirmed its use. *State v. Graven,* 54 Ohio St.2d 114, 374 N.E.2d 1370, 1373 (1978); *State v. Shank,* 88 S.D. 645, 226 N.W.2d 384, 386 (1975); *State v. Langston,* 265 S.C. 74, 216 S.E.2d 875, 876 (1975); *State v. Goodrick,* 95 Idaho 773, 519 P.2d 958, 961 (1974); *State v. Bratcher,* 206 S.E.2d 408, 410 (W.Va.1974); *Bunch v. State,* 499 S.W.2d 1, 3 (Tenn.1973); *Zdiarstek v. State,* 53 Wis.2d 420, 192 N.W.2d 833, 837 (1972); *State v. Champagne,* 198 N.W.2d 218, 229 (N.D.1972); *Johnson v. State,* 258 Ind. 683, 284 N.E.2d 517, 519 (1972); *State v. Anderson,* 270 So.2d 353, 357 (Fla.1972); *State v. Lemieux,* 160 Conn. 519, 280 A.2d 874, 875 (1971); *Barrett v. State,* 253 So.2d 806, 809 (Miss.1971).

Respondent relies heavily on the case of *Blakely v. State,* 542 P.2d 857 (Wyo.1975). In *Blakely,* the appellant was charged with feloniously misbranding livestock and was found guilty by a jury. The conviction was based entirely upon circumstantial evidence. The defendant alleged that the trial court erred in refusing to add the phrase "to the exclusion of all others" to the cautionary instruction on circumstantial evidence. The instruction that was given to the jury read as follows:

> In this case the State is relying solely on circumstantial evidence and you are instructed it is a well-established rule of law that, where circumstantial evidence alone is relied upon, the circumstances when considered together must point clearly and conclusively to the guilt of Howard Blakely and exclude every reasonable hypothesis other than that of guilt.

*Id.* at 861. The Wyoming Supreme Court stated that the circumstantial evidence instruction given by the trial court was consistent with prior Wyoming Supreme Court decisions. The court then overruled the prior Wyoming decisions that required the reasonable hypothesis instruction in cases involving circumstantial evidence, criticizing the instruction as "wishy-washy, misleading and constantly raising questions." *Id.* at 862.

We are not persuaded by the approach adopted in *Blakely.* The Wyoming Supreme Court ignored the suggestion in *Holland,* also present in the cases from other jurisdictions adopting the rule in *Holland,* that it is only appropriate to dispense with the reasonable hypothesis instruction in a case involving circumstantial evidence "where the jury is properly instructed on the standards for reasonable doubt." 348 U.S. at 139, 75 S.Ct. at 137.[3] Where no instruction on the standards for reasonable doubt is permitted, we do not think that it is appropriate to leave the jury without the guidance of a reasonable hypothesis instruction.

Respondent contends that MAI–Cr 3.42 tends to relegate circumstantial evidence to an inferior status by distinguishing direct evidence from circumstantial evidence. This contention fundamentally misconstrues the purpose and function of MAI–Cr 3.42. We acknowledge, and it is now generally recognized, that circumstantial evidence is not inherently of less probative value than direct evidence. To say the two types of evidence are equal in weight, however, is not to say that they are equal in all respects. The distinction between the two

---

3. For a discussion of this aspect of *Holland, see* Note, Abrogating the Cautionary Instruction in Criminal Prosecutions Relying Substantially on Circumstantial Evidence, 11 Land and Water L.Rev. 623, 628–32 (1976).

types of evidence remains useful. This court has defined direct evidence as " 'evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.' " *State v. Famber*, 358 Mo. 288, 214 S.W.2d 40, 43 (1948). The distinction is not cast in terms of the weight to be accorded each type of evidence, but in terms of the pattern of logical inference which must be employed in reasoning from circumstantial evidence. We think this difference warrants the continued use of MAI–Cr 3.42. Because circumstantial evidence requires jurors to use an inferential process to determine an ultimate fact, it is appropriate to caution them to make certain that their inferences are reasonable, consistent with the guilt of the defendant and inconsistent with any reasonable theory of his innocence.

In reasoning from circumstantial evidence to the existence of a fact in issue, a juror is called upon to supply a missing premise from his own experience. In the instant case, for example, the jury is asked to infer, from the facts that a house was burglarized on the morning of May 26, 1976, that the appellant was seen in the driveway of the house that same morning and that shortly afterward the appellant was driving a van in which items taken from the house were found, the conclusion that the appellant himself committed burglary. The jurors must supply from their own experience the major premise of the syllogism: "If a person is found in the vicinity of a burglarized house near the time of the burglary and in possession of items taken in the burglary, then that person has committed burglary." The prosecution is not required to produce empirical studies demonstrating the reliability of such a generalization. The only protection a criminal defendant has against inferences drawn from a doubtful major premise is the assurance that the jury will subject the suppressed premise to the reasonable doubt standard of proof. Our requirement that an inference of guilt be inconsistent with any reasonable *theory* of innocence forces the jury to subject the major premise used in drawing the inference to the same reasonable doubt scrutiny to which it subjects all the other evidence presented at trial. We think that the additional guidance offered a jury by MAI–Cr 3.42 is necessary to protect a defendant from juror speculation. This instruction does not conflict with MAI–Cr 2.20, because it does not attempt to define the reasonable doubt standard. Neither does the instruction invoke a different or higher standard of proof for circumstantial evidence than for direct evidence.[4] It merely instructs the jury to apply the reasonable doubt standard to each phase of the inferential process involved in drawing conclusions from

---

4. One of the most incisive analyses of the similarity in probative value of direct and circumstantial evidence is found in *Ex Parte Jefferies*, 7 Okl.Cr. 544, 124 P. 924, 924–25 (1912). In that case, the Honorable Judge Furman argues that even the most direct evidence relies on circumstances for its credibility, weight and effect. For example, if the witness testifies: "I saw A shoot B," in fact the witness can only swear to seeing A point a gun at B, seeing a flash and hearing a report, and seeing B fall to the ground with a bullet wound. J. Furman argues that only past experiences, *i. e.*, circumstances, prove that A fired the gun. This analysis does not erode the distinction that we have drawn. For in such a case, the jury is instructed to weigh the credibility of the witness against the reasonable doubt standard for inferring from his observations that A shot B. But if the witness testifies only "I saw A point a gun at B, then saw a flash and heard a report, and saw B fall to the ground with a bullet wound," it remains for the jury to draw the inference that A shot B. If the jury is not instructed that each proposition in the syllogism used to draw the inference survives reasonable doubt scrutiny, then the defendant has less protection against speculation in the case based on circumstantial evidence than he does in the case based on direct evidence. Numerous cases infer from the fact that circumstantial evidence is equal in weight to direct evidence that the reasonable hypothesis instruction is not needed. For the reasons discussed, we have concluded that such an inference is unwarranted. At least one other jurisdiction requires a reasonable hypothesis instruction while acknowledging that the difference between direct and circumstantial evidence is not a difference in probative force. *State v. Murphy*, 113 R.I. 565, 323 A.2d 561, 565 (1974).

circumstantial evidence. Far from being inconsistent with the rule forbidding the futile attempt to define "reasonable doubt," the circumstantial evidence instruction is needed precisely because Missouri practice forbids defining reasonable doubt. The failure to give MAI–Cr 3.42 in this case constituted error. It remains to determine whether this error was prejudicial to the appellant. Rule 22.02(e).

Respondent contends that the trial court's refusal to give MAI–Cr 3.42 in this case was "harmless error," on the ground that the evidence of appellant's guilt was overwhelming and that the language of MAI–Cr 3.42 itself implies that it would have been of no assistance to appellant. Respondent notes that MAI–Cr 3.42 tells the jury that they should not find the defendant guilty unless the facts and circumstances proved are consistent with each other and the guilt of the defendant and inconsistent with any theory of innocence. Respondent contends that since the appellant did not offer any theory of innocence, indeed presented no evidence in his own behalf, the failure to give MAI–Cr 3.42 could not have prejudiced the appellant. This ingenious argument puts the burden of interposing a theory of innocence on the defendant in a criminal case. Respondent's argument overlooks the fact that the instruction refers to "any reasonable theory" of innocence, and does not confine a jury to only those theories of innocence which the defendant might advance at trial. Whether or not a defendant introduces a theory of innocence at trial does not determine the prejudicial effect of the erroneous refusal to give MAI–Cr 3.42. "[A]ny such error must be deemed prejudicial unless the contrary clearly appears." *State v. Boyington*, 544 S.W.2d 300, 304 (Mo.App.1976); *State v. Billingsley*, 534 S.W.2d 484, 485 (Mo.App. 1975). It is not clear that the refusal of the trial court to give MAI–Cr 3.42 in this case was not prejudicial.

The instant case does not involve a minor deviation from MAI. The appellant offered no evidence of his own. His hope for acquittal rested entirely on the hope that the jury would not believe that the circumstan-

tial evidence presented against him demonstrated that he was guilty. Here, unlike *Boyington*, there was no instruction to accomplish the purpose of the refused instruction. The refusal to give MAI–Cr 3.42 in this case was prejudicial to the appellant, and his conviction must therefore be reversed.

■ The second issue raised is whether the court erred in failing to declare a mistrial after the prosecutor commented, during his opening statement, that appellant had no driver's license in his possession at the time of arrest. The appellant's attorney raised objection to this statement on the ground that it referred to another separate and unrelated crime. The appellant's objection was sustained; however, his motion for mistrial was denied. It is well-settled in Missouri that proof of the commission of a separate and distinct crime by the defendant is not admissible, unless such proof has a legitimate tendency to establish defendant's guilt of the charge for which he is on trial. *State v. Carter*, 475 S.W.2d 85, 88–89 (Mo.1972); *State v. Reed*, 447 S.W.2d 533, 534 (Mo.1969) (per curiam); *State v. Selle*, 367 S.W.2d 522, 529 (Mo.1963) (per curiam); *State v. Shilkett*, 356 Mo. 1081, 1086, 204 S.W.2d 920, 922–23 (1947) (per curiam). While it is not a crime in Missouri to fail to produce one's driver's license upon demand of a police officer, such failure is presumptive evidence that one is not duly licensed. *State v. Campbell*, 564 S.W.2d 867, 869 (Mo. banc 1978). Because this case is reversed on other grounds and must be retried, and the trial court will have an opportunity to rule on this question should it resurface, we find it unnecessary to make a further ruling at this time.

■ The third point raised by appellant involves the validity of the search made subsequent to appellant's arrest. Appellant urges that the search of his carryall van was illegal because the police did not have the reasonable suspicion required to validate the investigatory stop of the appellant. We do not agree with appellant's argument.

Where police officers entertain a *reasonable suspicion* that criminal activity may be afoot, they may stop the suspected person, identify themselves as police officers, require the suspect to identify himself, and make reasonable inquiries concerning his activities. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Rankin*, 477 S.W.2d 72, 75 (Mo.1972) (per curiam); *State v. Johnson*, 566 S.W.2d 510, 513 (Mo.App. 1978). The United States Supreme Court has found that the "reasonable suspicion" that entitles an officer to stop an individual is present when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880. *See also United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

Applying these principles to the presented facts, we find that the police had "reasonable suspicion" to stop the appellant. The police saw the appellant's van and a Buick stop at an intersection in west St. Louis County and saw the appellant confer with the occupants of the Buick and open the hood of his van. They saw the Buick drive into a fashionable subdivision and shortly thereafter they saw appellant close the hood and proceed in the same direction. Twenty minutes later, they saw the appellant's van and the other vehicle pull out of the driveway to a house that cannot be seen from the road. They saw that the driver of the Buick was wearing gloves, though it was late in May. They saw both vehicles proceed to another location where the Buick again entered the driveway at a private residence and the appellant raised the hood on his van and remained beside the roadway. These facts are sufficient to justify the police in stopping the appellant. The officers were aware of specific articulable facts that, together with rational inferences drawn therefrom, led them to suspect that criminal activity was afoot. The "reasonable suspicion" which is needed to justify an investigation stop need not rise to the level of probable cause to arrest.[5] It is not necessary that the articulable facts and rational inferences on which the officer acts exclude every possible interpretation other than criminal activity. The standard is whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate. *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868.

Apart from the propriety of the initial stop, after the radio transmission was received from Detective Stewart, the police did possess the requisite probable cause to arrest the appellant and make subsequent search of his vehicle. At that point, police could relate the appellant circumstantially to the commission of a crime by placing the appellant in the driveway of a house which had just been burglarized. Reasonable grounds for the arrest and search were present. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 161–62, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Smith*, 462 S.W.2d 425, 426 (Mo.1970) (per curiam).

Our holding is not inconsistent with *State v. Hicks*, 515 S.W.2d 518 (Mo.1974) (per curiam) and *State v. Goodman*, 449 S.W.2d 656 (Mo.1970), cited by appellant. In those cases it was held that a search incident to an arrest made without probable cause to believe a crime has been committed or that the person arrested committed the crime violated the defendant's right against unreasonable seizure. The instant case is distinguishable in that the police acquired reasonable grounds to arrest appellant before making the arrest.

For the reasons discussed herein, the cause is reversed and remanded for a new trial consistent with this opinion.

All concur.

---

5. The governmental interest in effective crime prevention and detention "underlie the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880.