**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Anthony GAY, Defendant-Appellant.**

**No. 42574.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 27, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1981.

Application to Transfer Denied
Feb. 16, 1982.

---

Larry W. Glenn, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green and Susan Boersig, Asst. Attys. Gen., Jef-

ferson City, George Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

STEWART, Judge.

Defendant appeals from a judgment entered upon the verdict of a jury that convicted him of burglary in the second degree and assessed punishment at a term of one year in the St. Louis County jail.

For reversal defendant contends that the court erred in (1) overruling his motion to suppress evidence and in admitting into evidence a calculator found in a car driven by defendant because the police officer did not have probable cause to stop defendant and because defendant was stopped outside the jurisdiction of the police officer; (2) overruling his motion to suppress identification and in permitting two officers to identify defendant in court; (3) failing to sustain his objection to the State's argument when it defined "reasonable doubt"; and (4) not sustaining an objection and declaring a mistrial when the State in closing argument made a direct reference to the fact that defendant did not testify in his own defense.

Defendant does not question the sufficiency of the evidence to sustain the conviction. We shall review the facts necessary to a determination of the first two issues raised by defendant.

On May 22, 1979 at about 3:15 a. m. Officer Sherri Clay of the University City Police Department was dispatched to Streetside Records at 6314 Delmar in University City where the burglar alarm was sounding. Upon arrival she looked through the front door and saw two black males climbing out a small panel window in a door. The officer broadcast a description of the men. She described defendant as a "[b]lack male in his 20s, short, medium build, close-cut hair, white T-shirt, white pants, and orange underwear visible to the waist."

Officer Clay then ran to the rear of the building where she saw defendant and the other person coming toward her. She apprehended defendant's accomplice, turned him over to her assist unit and pursued defendant. She chased him across Delmar through the parking lot of a gas station where she was joined by Sergeant Endicott. They chased defendant north through an alley. Defendant jumped a fence at the rear of 611 East Gate and the officers lost sight of him. Sergeant Endicott continued to search the area and Officer Clay returned to Streetside Records.

Captain Schwartz, the watch commander, was in his office when he heard the dispatcher assign Officer Clay to investigate the cause of the alarm at Streetside Records. When he heard Clay's description of defendant he drove to the scene of the burglary. After he was assured that the scene was secured he drove east on Delmar to East Gate and north on East Gate. East Gate is a narrow street with cars parked on either side of the street. As he approached Enright Avenue near the border of University City and the City of St. Louis he saw headlights approaching him from the north. Captain Schwartz was in the City of St. Louis at the time and the car he saw was just leaving University City and entering the City of St. Louis. In the motion to suppress Captain Schwartz testified that he was practically stopped and the approaching car was moving slowly as the cars passed. The distance between the cars as they passed was about eighteen inches. Captain Schwartz observed that the driver of the car was black, short in stature, with close-cut hair and appeared to be in his twenties. He was of medium build. Defendant was bare chested although it was a cool evening. Captain Schwartz turned around in the nearest driveway and followed defendant south on East Gate to Delmar then east on Delmar. Captain Schwartz broadcast his intention to stop defendant and pulled him over at 6145 Delmar in the City of St. Louis about two blocks from Streetside Records.

When Captain Schwartz approached the car he could see a calculator on a shelf under the dashboard of the car. He also saw a white knit cloth that looked like a shirt on the floor of the car. It was partially under the front seat. Captain Schwartz

also observed that defendant was wearing white slacks and that orange undershorts were protruding above the waistband of defendant's slacks. Captain Schwartz then told defendant to get out of the car and placed defendant under arrest. He discovered that the cloth on the floor was a white T-shirt.

Officer Clay and Sergeant Endicott arrived within a minute of the arrest and identified defendant as the suspect that they had been chasing.

The officers took possession of the calculator. The calculator was identified as the property of Streetside Records; it had been in the store when the store was closed and locked up for the night.

■ Defendant argues that Captain Schwartz did not have "probable cause" to stop defendant therefore "the sight of the calculator and the seizure of it was without a constitutionally permissible basis." Defendant misconceives the standard applicable in this case. Captain Schwartz did not immediately arrest defendant. The stop of defendant can best be described as an investigative stop. Under such circumstances the standard to be applied is whether the police officer reasonably suspects that criminal activity may be afoot. The officer may then stop the suspected person, identify himself as a police officer, require the suspect to identify himself, and make reasonable inquiries concerning his activities. *State v. Lasley*, 583 S.W.2d 511 (Mo.banc 1979). Reasonable suspicion to stop a person exists when the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion" need not rise to the level of probable cause to arrest. *State v. Lasley, supra.*

■ In the present case a crime had been committed and a suspect had been chased to the area where Captain Schwartz first saw defendant. A police officer who witnessed the crime and saw defendant gave a comprehensive description of defendant. When Captain Schwartz first saw defendant he observed that defendant fit the physical description of the burglar in that he was black, medium build, short, and had close-cut hair. He also noted that defendant was not wearing a shirt on a cool night from which the officer could infer that defendant was attempting to change his appearance. There was sufficient cause to suspect that defendant was the suspect sought. *State v. Lasley, supra.*

■ We do not determine whether there was probable cause to arrest at the time defendant was stopped. Once stopped Captain Schwartz could see that defendant was wearing white slacks, orange undershorts and that defendant possessed a white T-shirt. The calculator was in plain view. The police then had probable cause to arrest. There was no impediment to the seizure of the calculator. *State v. Lasley, supra.*

Defendant's other attack upon the admission of the calculator is that it was the product of an illegal search and seizure because the police arrested him outside the jurisdiction of the University City Police Department and Captain Schwartz was not in "hot pursuit" of defendant.

■ We need not consider the issue of hot pursuit since the issue is readily ruled by Missouri cases on other grounds. Even a private citizen may make an arrest in Missouri where it is shown that a felony has been committed and reasonable grounds exist to suspect the arrested person. *State v. Fritz*, 490 S.W.2d 30, 32 (Mo.1973).

■ In this case a felony had been committed within the sight of Officer Clay, who conveyed the information along with a description to other police units. As explained above, Captain Schwartz had reasonable grounds to suspect defendant. The stop and the arrest were legal, even though Captain Schwartz was outside his jurisdiction. *State v. Fritz, supra.*

Defendant contends that the trial court erred in overruling his motion to suppress in-court identification and in admitting into

evidence the identification of defendant by Sergeant Endicott and Officer Clay. Defendant claims the identifications were the result of a one on one confrontation the officers had with him at the time of "defendant's illegal arrest."

The basis for relief under this point is an illegal arrest. We confine our decision to this contention. We have ruled that both the stop and the arrest were not constitutionally infirm. *State v. Lasley, supra; State v. Fritz, supra.* The court did not err in admitting the identification of defendant by the police officers.[1]

■ Defendant next contends that the court erred in failing to grant a mistrial when the assistant prosecuting attorney, referring to the instruction on reasonable doubt, made the following remark:

"Now, the instruction is 'reasonable.' Again, there's the use of the term 'reasonable.' 'And you will find him not guilty only if you have a reasonable doubt.' That means you have to use your common sense."

■ Defendant claims that the above argument was an attempt to define reasonable doubt. It is improper for counsel to instruct the jury as to a definition of reasonable doubt. *State v. Belleville*, 530 S.W.2d 392 (Mo.App.1975). There is, however, a distinction between impermissible definitions of "reasonable doubt" and permissible remarks or discussions concerning reasonable doubt, particularly as they pertain to the facts of the case. *State v. Wilbon*, 561 S.W.2d 133, 134 (Mo.App.1978).

A comprehensive review of the cases involving this issue can be found in *State v. Jones*, 615 S.W.2d 416 (Mo.1981), a case handed down after this case had been submitted. It was there held that it was error to tell the jury that "reasonable belief" in defendant's guilt satisfied the requirement of proof beyond a reasonable doubt. *Id.* 420.

In the case at hand, the assistant prosecuting attorney, in speaking of reasonable doubt, said, "[t]hat means you have to use your common sense." Defendant's argument is focused on the last sentence. This sentence can hardly be called a definition; it is not truly connected with reasonable doubt. It is more a non sequitur such as most spirited trial advocates are prone to spew forth at times during heated argument. It might also be read as the standard argument that jurors do not leave their common experiences and common sense behind when they enter the jury box. See *State v. Huffer*, 424 S.W.2d 776 (Mo. App.1968). The other comments quoted above are merely permissible discussions of "reasonable doubt."

■ The control of oral argument rests within the broad discretion of the trial court. *State v. Hammond*, 578 S.W.2d 288, 289 (Mo.App.1979). Counsel here made a passing reference to reasonable doubt. It was not mentioned thereafter. The jury could not have been misled by this argument. We see no reason to say that the trial court abused its discretion in this case.

■ Defendant also contends that the portion of the argument in which the State comments that the State's evidence was uncontradicted was a reference to defendant's failure to testify. To place the comment in context we quote the statement preceding and the comment of which defendant complains:

"Now, why is he running? At three fifteen in the morning why is he running from a lady police officer and a man police officer? Number two, what's he doing with Ferzacca's calculator in the car? There's flight; shows guilt. Possession of recently stolen property also shows guilt, guilt all over.

Now, this evidence presented by the court is uncontradicted."[2]

---

1. Counsel in his brief relies upon *Crews v. United States*, 389 A.2d 277 (D.C.App.1978). After the briefs had been filed here that case was reversed in *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

2. The assistant prosecuting attorney subsequently corrected his slip of the tongue by telling the jury that he meant "evidence presented by the State."

Defendant did not testify and no evidence was offered on his behalf.

It has been repeatedly held that comments of the prosecutor to the effect that the State's evidence was "undenied," "undisputed," "uncontradicted," and that it "wasn't controverted," and the like are not direct and certain references to defendant's failure to testify. *State v. Hampton*, 430 S.W.2d 160, 163 (Mo.1968); *State v. Gregg*, 399 S.W.2d 7, 11 (Mo.1966); *State v. Baker*, 439 S.W.2d 515, 516 (Mo.1969); *State v. Robb*, 439 S.W.2d 510, 514 (Mo.1969).

Defendant places his reliance upon statements in *State v. Hampton, supra* to the effect that an improper reference to defendant's failure to testify is shown if only the defendant himself could or would contradict the evidence to which the State refers in its argument. The evidence to which the assistant prosecuting attorney primarily refers is possession of a stolen calculator. Any number of witnesses who might have seen the calculator in defendant's possession prior to the date of the burglary, or the person from whom defendant obtained the calculator could have contradicted the State's evidence. Further, defendant's accomplice could have given evidence that defendant was not with him at the time of the burglary. The statement of the assistant prosecuting attorney was not erroneous.

The judgment of the trial court is affirmed.

DOWD, P.J., and SMITH, J., concur.