**STATE of Missouri, Respondent,**

v.

**Alicia FERNANDEZ, Appellant.**

**No. 66538.**

Supreme Court of Missouri,
En Banc.

May 29, 1985.
Rehearing Denied June 25, 1985.

Sean D. O'Brien, James W. Fletcher, Kansas City, for appellant.

Mark Richardson, Bruce Farmer, Asst. Attys. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Fernandez was convicted of possession of phencyclidene (PCP), a schedule II controlled substance. The Missouri Court of Appeals, Western District, affirmed the conviction. We granted transfer of the case to consider the legality of certain evidence. We affirm.

At approximately 1:00 a.m. on May 4, 1982, two police officers were radio dispatched to a residential neighborhood based on a telephone call to police that "a woman screaming and parties armed" were at a certain intersection. Three officers responded. Officer Phillips was the first to arrive. He saw a car parked near an intersection in the vicinity of the reported disturbance. Phillips quietly drove to the back of the car. The other police officers arrived and also approached the car. Two people were in the car and a third was entering it. Phillips ordered everyone out of and to the rear of the car. They obeyed and Officer Fletcher attempted to check identifications. During the check, Phillips made a visual inspection of the car's interior for weapons and other people and saw nothing irregular. Suddenly, defendant darted past Phillips and grabbed her purse from the interior of the car. Phillips told her to return it to the car. She refused and clutched it close to her body. Phillips told her to give it to him. She brought it over her head as if to strike him. Fearing there was a handgun in it, Phillips took possession of the purse. It opened, on its own accord, and drugs appeared in plain view. Phillips recognized the drugs because of his experience with narcotics enforcement. Defendant was arrested, and

she made inculpatory statements to Phillips.

Defendant claims the search was illegal, and all evidence and statements derived from the search should have been suppressed.

■ We examine defendant's contention under the dual test of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Hensley,* — U.S. —, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). *Terry* recognizes the need for intermediate stops even when there is no probable cause for arrest. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). A *Terry* stop is investigatory; it is not an arrest. *United States v. Sharpe,* — U.S. —, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). A *Terry* stop must meet Fourth Amendment standards because it is a seizure of a person. When a police officer restrains a person's freedom to walk away he has seized that person. *Tennessee v. Garner,* — U.S. —, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Phillips seized defendant when he ordered her out of the car. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). *See, e.g., Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

■ *Terry* requires that the stop be justified at its inception. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved or is wanted in a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Hens-*

ley, supra, 105 S.Ct. at 681. This is an objective standard measured by the totality of the circumstances.[1] *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), *reh'g denied,* 455 U.S. 1008, 102 S.Ct. 1648, 71 L.Ed.2d 877 (1982). The circumstances do not have to exclude the possibility of innocent behavior. *State v. Purnell,* 621 S.W.2d 277, 285 (Mo.1981). In the instant case a citizen informant directed police to the location of a crime.[2] It was late, and defendant's party constituted the only people in the area. Phillips had the power to stop defendant, identify himself as a police officer and question her about her activities. *State v. Lasley,* 583 S.W.2d 511, 518 (Mo. banc 1979).[3]

■ *Terry* also requires the scope of the encounter to be reasonably related to the circumstances that justified the stop. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The radio dispatch gave police a reasonable suspicion that defendant had weapons. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983). In *United States v. Jones,* 759 F.2d 633 (8th Cir.1985), the court approved a *Terry* encounter even though actions before the initial approach did not give the police officer a reason to suspect defendant was armed or had committed a crime. The situation developed to allow a cautious and experienced officer to take more intrusive actions. In determining the permissible scope of intrusions we must balance the need to locate criminals and protect police

1. In *United States v. Jones,* 759 F.2d 633, 639 (8th Cir.1985), the court identified factors to evaluate the reasonableness of police action in a similar context:
 a. The number of police and patrol cars appearing at the scene.
 b. The nature of the crime and reason to believe the suspect is armed.
 c. The strength of the suspicion.
 d. Erratic behavior of or suspicious movements by suspects.
 e. Need for immediate action.
 f. Lack of opportunity to act differently.

2. Citizen informants observations are reliable even to justify the higher standard of probable cause. *State v. Perry,* 499 S.W.2d 473 (Mo.

1973); *State v. Cole,* 662 S.W.2d 297 (Mo.App. 1983).

3. Defendant's case citations are distinguishable. In *Kansas City v. Fulton,* 533 S.W.2d 677 (Mo. App.1976), a frisk was unjustified because police had no reason to believe the suspect was armed and dangerous. The dispatch was for a property crime and no actions by defendant created a suspicion. Here, the dispatch was for a violent crime. Defendant was the only one at the location. And the way she treated her purse was suspicious. *State v. Crum,* 536 S.W.2d 507 (Mo. App.1976) is inapplicable because the court merely found a lack of probable cause. Probable cause is not the standard for a *Terry* stop.

officers against the invasion of the individual, considering the nature and quality of the intrusion. *Terry, supra.*

 In the case at bar the governmental interest was very strong. *Hensley, supra,* 105 S.Ct. at 681. The officers were authorized to take steps necessary to protect themselves and preserve the status quo. *Id.* at 684. Officer Phillips' taking the purse from defendant was justified under the circumstances and did not exceed the bounds of reasonable actions. *Cf. State v. Cotterman,* 544 S.W.2d 322 (Mo. App.1976) (police officer exceeded scope of *Terry* by reaching into suspect's pocket). The contraband then became exposed and within the plain view exception. *Accord, State v. Giffin,* 640 S.W.2d 128 (Mo.1982). Officer Phillips reacted to a changing situation as a cautious and experienced officer. The trial court properly denied the suppression motion.

The judgment is affirmed.*

RENDLEN, C.J., HIGGINS, BLACKMAR and DONNELLY, JJ., and PREWITT, Special Judge, concur.

WELLIVER, J., dissents in separate opinion filed.

GUNN, J., not sitting.

WELLIVER, Judge, dissenting.

I respectfully dissent.

I do not believe that the initial detention of appellant was lawful.[1] After an anonymous distrubance call, reporting a female screaming with "parties armed" and the use of "ball-bats," the police were mistakenly dispatched to the wrong intersection, where appellant and the two other individuals with her were the only persons in the area. Nothing whatever gave the three officers any indication that appellant was in any way involved in the events which prompted the police investigation. Once the police determined that appellant was not involved in the incident with the "ball-bats," and without any additional particularized basis for suspecting appellant of wrongdoing, the officers' inquiry should have ceased. The inquiry, however, did not end but rather appellant was ordered out of the car and directed toward the rear of the vehicle where she was questioned by one officer while another conducted a visual inspection of the car. It is this detention of appellant that was unlawful and any evidence subsequently obtained was the "fruit of a poisonous tree."

The officers had the right to approach appellant in order to determine whether she had either seen or been engaged in the disturbance. Such an action would not have constituted a *"Terry"* stop. Once her involvement in the disturbance was dispelled, the officers should have concluded their inquiry, unless other specific and articulable facts suggested to the officers that appellant was engaged in another sort of wrongdoing. The evidence in the record belies the claim that the officers had specific and articulable facts that appellant was engaged in any other wrongdoing or that her purse contained a handgun which could have been used to harm the officers.

I would reverse the judgment of the trial court.

---

* In view of several statements found in the dissent as to facts in the case, it should be pointed out that both the suppression and trial transcripts show: (1) all three police officers arrived nearly simultaneously at the intersection mentioned in the radio dispatch; (2) further, the two testifying officers stated the dispatch referred to a "woman screaming and parties armed"—nothing about ball bats.

1. I draw liberally from Judge Clark's dissenting opinion when this case was before the court of appeals.