STATE of Missouri, Respondent,

v.

Carl G. COBB, Appellant.

No. WD 51460.

Missouri Court of Appeals,
Western District.

Sept. 17, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1996.

Mike Gunter, Kansas City, for appellant.

Clair C. McCaskill, Pros. Atty., Susan M. Elliott, Asst. Pros. Atty., Jackson County, Kansas City, for respondent.

HANNA, Judge.

Carl G. Cobb was found guilty by a jury of a class A misdemeanor of driving while intoxicated, §§ 577.010 and 577.023(3)(2), RSMo 1994. The defendant was sentenced as a prior offender to a period of six months confinement in the Jackson County Department of Corrections. The sole issue on appeal is whether the initial stop of the defendant's vehicle was constitutional.

The facts that the trial court had before it which bear on the issue of the constitutionality of the stop are as follows. Kansas City police officers Todd Zimmerman and Rodney Johnson were on duty December 5, 1994, when they were dispatched at approximately 12:00 a.m. on a disturbance call involving a white Blazer automobile at Tenth and Broadway in Kansas City. As they approached the scene of the incident, they were flagged down by a citizen around Sixth and Broadway, who stated that "there's a white man in [a] white Blazer trying to run over a white female up the street."

The officers proceeded south on Broadway towards Tenth where they were flagged down by a second individual between Seventh and Eighth on Broadway. They again were told that a white male in a white Blazer was chasing a white female and was trying to run her over. The officers drove to Tenth Street and headed west towards Washington Street, where they saw a white Blazer driven by a white male turning east on Tenth Street. Washington is one block east of Broadway. The officers turned around to get behind the Blazer and then stopped the vehicle. There were no other white Blazer automobiles in the area.

The officers approached the Blazer and asked the driver, defendant Carl Cobb, to step out. Zimmerman smelled a strong odor of alcohol. He administered the gaze nystagmus test. Johnson conducted the one-legged

stand test and the walk-and-turn test. While Johnson conducted these tests on the defendant, a white female, whom the officers determined the defendant had been chasing, arrived from the corner of Tenth and Broadway. She was intoxicated and belligerent toward the officers. The defendant then refused to take the breathalyzer test and was arrested for driving under the influence.

At the trial, both Johnson and Zimmerman described the events leading to the stop of the defendant's vehicle. They testified that, in their opinion, the defendant was intoxicated. Neither the dispatcher nor the two citizen eyewitnesses testified at either the motion to suppress or the trial.

■ The defendant claims that the trial court erred because it did not suppress all evidence of intoxication which he argues resulted from an illegal and unconstitutional stop of the defendant's vehicle under the Fourth and Fourteenth Amendments. The defendant specifically argues that the police officers lacked reasonable suspicion or probable cause to make the stop because they failed to corroborate the radio dispatch or the "anonymous tips" provided by the two citizens.

■ The police may make an investigatory stop of persons in the absence of probable cause without violating the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, to be consistent with the Fourth Amendment, the police must have a reasonable suspicion that criminal activity is afoot based on articulable facts known to the officer making the stop. *Id.* at 30, 88 S.Ct. at 1884. Likewise, law enforcement officers may briefly stop a moving automobile upon reasonable suspicion to investigate whether its occupants are involved in criminal activity. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

■ In determining the appropriate limits on such investigatory stops, the nature and quantity of the intrusion on personal security must be balanced against the importance of the governmental interest. *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). The requisite articulable facts and reasonable suspicion are based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *State v. Duncan*, 879 S.W.2d 749, 751 (Mo.App.1994). This test is one of practical, common sense deduction based on the specific information communicated to or observed by the officer making the stop. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695.

Whether the initial stop of defendant's vehicle was constitutional therefore depends on whether the police officers had a reasonable suspicion based on articulable facts from the totality of the circumstances that the defendant was involved in criminal activity. The defendant relies on *Franklin* for his argument that neither the radio dispatch nor the anonymous tips from the two citizens provided the requisite reasonable suspicion to justify the stop of his vehicle. *State v. Franklin*, 841 S.W.2d 639 (Mo. banc 1992).

In *Franklin*, the defendant was stopped by a police officer on the basis of a radio dispatch stating that a " 'party armed, occupying a black 1984 Pontiac Fiero [was] in the area of 4200 East 60th Terrace' " in Kansas City. The officer observed a black Pontiac Fiero being driven near the location described in the radio dispatch, He approached the vehicle with his gun drawn and ordered Franklin out of his vehicle. The Missouri Supreme Court held that for a stop initiated in reliance upon a police radio dispatch to be justified under the Fourth Amendment, the dispatch must be based upon a reasonable suspicion. *Id.* at 643. Because the state did not meet its burden of proof or persuasion by a preponderance of the evidence of showing that the radio dispatch was issued on the basis of a reasonable suspicion, the Court held that the evidence was inadmissible. *Id.* at 644.

In the case before us, the state offered no proof at the suppression hearing or trial as to

the reasonable suspicion that supported the radio dispatch. Further, the defendant argues that the street informants are unreliable because the police officers did not learn their names, thereby equating unnamed informants with unreliable informants. He urges that the police officers must independently corroborate information given to them from the street witnesses.

*United States v. Lloyd,* 36 F.3d 761 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1325, 131 L.Ed.2d 205 (1995), presents a similar factual situation and is persuasive here. Two officers were approached by an unidentified citizen who told them he had encountered several black men with machine guns and other weapons and drugs in a nearby apartment complex. He claimed the men threatened to kill him if he did not leave. He identified the apartment complex. The officers did not know the man or question his identity.

The officers went to the apartment complex and found the building and its layout to be identical to that described by the witness. As they approached one of the apartments, a black man, later identified as Covington, emerged, and one of the officers pointed his gun and ordered the man to put his hands up. A scuffle ensued causing the officer to fall into the apartment doorway, at which point he then saw defendant Lloyd holding what appeared to be a machine gun. The issue was whether Covington was actually arrested without probable cause at the moment the officer pointed his gun at him and ordered Covington to put his hands up or whether this constituted a permissible investigatory stop. *Id.* at 763. The court held that the officer's attempt to stop Covington was a permissible investigatory *Terry* stop. *Id.*

The court relied on the description by an anonymous citizen of the circumstances involving a threat to his life by several individuals who were heavily armed. *Id.* The court noted that, for an investigatory stop, the police must have a reasonable articulable suspicion that a crime has been or is being committed, and not that they possess the probable cause to make a full arrest. *Id.* Even though the citizen witness was anonymous in this case, the court noted that "the witness spoke directly to the officers who were in a position to evaluate the credibility of the information provided." *Id.* This provided a sufficient basis for the requisite reasonable suspicion to justify the stop of Covington. *Id.*

Likewise, in the case before us, the police officers were able to evaluate the two citizen witnesses and the information they provided. The officers had been told by two independent citizen witnesses that a white man in a white Blazer was trying to run a woman over in the vicinity. Having spoken directly with these two witnesses, the police were in a position to conclude that both citizens provided reliable information. When the officers arrived in the vicinity of Tenth and Broadway, they observed what previously had been described: a white male driving a white Blazer. The fact that the officers did not learn the names of the witnesses or that the witnesses did not testify does not diminish their reliability which provided an adequate basis for the officers to formulate a reasonable articulable suspicion that a crime was being committed.

Based on the radio dispatch and the information provided directly to the officers by two citizens who independently witnessed the crime, the officers had a reasonable suspicion based on articulable facts to legally make a *Terry* stop. *See also State v. Fernandez,* 691 S.W.2d 267, 269 (Mo. banc 1985). All three sources of information, independent of each other and each reporting a factually similar scenario, establish the reliability of the reports such that a reasonable suspicion of criminal activity was occurring at that location by a white man driving a white Blazer.

The judgment of conviction is affirmed.

LOWENSTEIN, P.J., and SPINDEN, J., concur.