**STATE of Missouri, Appellant,**

v.

**Tommy Lee DAVID, Respondent.**

**No. WD 57162.**

Missouri Court of Appeals,
Western District.

Submitted Oct. 14, 1999.

Decided Feb. 22, 2000.

plaintiff's appeal and defendant's request for damages pursuant to Rule 84.19.

Pamela K. Vestal, Asst. Pros. Atty., St. Joseph, for Appellant.

Cole E. Eason, Maryville, for Respondent.

Before JAMES M. SMART, Jr., P.J., JOSEPH M. ELLIS and EDWIN H. SMITH, JJ.

JAMES M. SMART, Jr., Judge.

The state, under § 547.200.1(3) Supp. 1998, appeals a trial court ruling suppressing evidence in a prosecution for possession of methamphetamine. The state contends the search was a lawful investigatory search incident to a lawful stop for identification purposes. We affirm the trial court ruling suppressing the evidence.

## Factual Background

Law enforcement authorities of Buchanan County had received reliable information that Stanley Smith of Maitland, Missouri, was involved in the manufacture of methamphetamine. Officers had obtained a search warrant they intended to execute the same night that Smith would be attending a substance abuse class in St. Joseph. Officers set up surveillance at the substance abuse center to verify Smith's presence there so that the warrant could be executed without Smith being at home. The officers understood that a friend of Smith's, Tommy Lee David, would accompany Smith to the substance abuse center.

Eventually, individuals believed to be Smith and David were observed arriving at the center, parking, and entering the building. Officer Mike Strong, testifying at the hearing, said he had a "reasonable suspicion" that the men were Smith and David. Shortly thereafter, David returned to the car, went to the passenger side, bent over and began doing something inside the vehicle. Officer Strong and other officers approached David and detained him, handcuffed him and frisked him for weapons. Officer Voltmer informed Officer Strong that syringes were in plain view in the open glove compartment. Strong then looked, observing syringes and also two small butane burners and a crumpled coffee filter. Officer Strong grabbed the filter and opened it. In the filter was a white crystal substance he believed to be amphetamine. Strong formally arrested David for possession of methamphetamine, with which David was later charged.

## Motion to Suppress

At a hearing on the motion to suppress, Officer Strong informed the court that the officers approached and detained David because they wanted to make sure of his identity. The officers considered David potentially dangerous because he was a

friend of Smith, and Smith had been known to use a gun. Officer Strong also maintained that David was not arrested until after the paraphernalia was observed in plain view in the glove compartment. The court, however, concluded that the detention was pretextual. The court found that David was arrested before the paraphernalia was observed, and held that there was no probable cause for David's arrest at that time. The court ordered the evidence suppressed.

## Standard of Review

■ The question of whether the Fourth Amendment rights of a subject have been violated is a question of law. *State v. Ricketts,* 981 S.W.2d 657, 659 (Mo. App.1998).[1] Nevertheless, the interpretation of the facts and circumstances related to the seizure is a matter of some discretion. We will reverse the trial court's interpretation of the facts and circumstances only if we find the trial court was "clearly erroneous." *Id.* If the trial court findings are reasonable, taking into account the entire record, we will not reverse, even if we would have judged the factual and credibility issues differently. *State v. Milliorn,* 794 S.W.2d 181, 184 (Mo. banc 1990).

## Analysis

■ The Fourth Amendment prohibits only "unreasonable" searches and seizures. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Article I, Section 15 of the Missouri Constitution is coextensive with the Fourth Amendment. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). Searches conducted without a warrant are presumed to be unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The burden of showing justification for a warrantless search rests with the state. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ The Fourth Amendment is not violated when a law enforcement officer briefly stops a person if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person was or is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A police officer has the authority "to make a forcible stop of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place,* 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

■ However, a *Terry* stop must be justified from the start. *State v. Fernandez,* 691 S.W.2d 267, 269 (Mo. banc 1985); *State v. Thompson,* 826 S.W.2d 17, 19 (Mo. App.1992). This is because such a stop constitutes a seizure and is thus subject to Fourth Amendment standards. *Fernandez,* 691 S.W.2d at 269.

■ A *Terry* stop need not be based on probable cause and an officer may take precautions during an investigatory stop. As the United States Supreme Court noted in *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972):

In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.,* at 22, 88 S.Ct. 1868. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. *See id.,* at 23, 88 S.Ct. 1868. A brief stop of a suspicious individual, in order to deter-

1. All sectional references are to Missouri Re-

vised Statutes 1994, unless otherwise noted.

mine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.*, at 21–22, 88 S.Ct. 1868; *see Gaines v. Craven,* 448 F.2d 1236 (C.A.9 1971); *United States v. Unverzagt,* 424 F.2d 396 (C.A.8 1970).

The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," he may conduct a limited protective search for concealed weapons. 392 U.S., at 24, 88 S.Ct. 1868. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. *Id.* at 30, 88 S.Ct. 1868.

Here, the question is whether the state has shown that the officers were entitled to make a forcible stop. There is no evidence that the officers were investigating criminal behavior on the part of David when they stopped David. A suspicion that the individual in the parking lot was David is not a suspicion of criminal activity. The officer did not articulate any reasonable suspicion that David was about to commit, or had committed, any crime. Without this suspicion, the state can provide no justification for a *Terry* stop, because "[r]easonable suspicion must be based upon a specific, articulable set of facts indicating that criminal activity is afoot." *State v. Slavin,* 944 S.W.2d 314, 318 (Mo. App.1997). Without justification for the stop, there is no justification for the search.[2]

■■■■■■ "An arrest may not be used as a pretext to search for evidence." *King v. State,* 839 S.W.2d 709, 713 (Mo.App.1992). "In determining whether an arrest is pretextual, we assess the officer's actions in terms of whether the officer was objectively authorized and legally permitted to do what he or she did." *State v. Poindexter,* 941 S.W.2d 533, 536 (Mo.App.1997). The officers' actions at the scene are consistent with the court's finding that the search was pretextual. It was clear from the evidence that the officers were reasonably sure of David's identity and that, even if they had wanted additional confirmation of identity, they could have obtained that information without arresting and handcuffing David.

## Plain View

■■■■ The state's fallback position is that the syringes, butane burners and filter were in plain view and that officers

---

**2.** A *Terry* investigatory "stop and frisk" should be just that. The officer's knowledge that *Smith* had been known to shoot at trespassers does not provide a basis to believe that *David* was dangerous. As this court recently explained in *State v. Leavitt,* 993 S.W.2d 557, 561 (Mo.App.1999):

> Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed. *State v. Rushing,* 935 S.W.2d 30, 32 (Mo. banc 1996). "The purpose of this limited search is not to discover evidence of crime, but to allow the

officer to pursue his investigation without fear of violence." *Id.* (quoting, *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). As stated in *Terry,* 88 S.Ct. at 1884:

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

may seize any evidence discovered during the course of an investigatory search if the evidence is in plain view.

The "plain view" exception to the warrant requirement "applies when: (1) the evidence is observed in plain view while the officer is in a place where he has a right to be; (2) the discovery of the evidence is inadvertent; and (3) it is apparent to the police that they have evidence before them." *State v. Schneider*, 736 S.W.2d 392, 399 (Mo. banc 1987). In *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the court applied the plain view doctrine to evidence observed within automobiles at a routine checkpoint established to check for driver's licenses. Here, there was no showing that the officers were entitled to pull David back from the vehicle, secure his hands, and then commence looking in his vehicle. The court could have reasoned that the officers could not have seen the disputed evidence if not for the unlawful seizure of David.

### Summary

We cannot say that the trial court abused its discretion in suppressing the evidence seized from David during his detention. We affirm the trial court ruling that the evidence was the fruit of an illegal search.

Judgment affirmed.

ELLIS and EDWIN H. SMITH, JJ., concur.