**STATE of Missouri, Respondent,**

v.

**Damar WEST, Appellant.**

**No. WD 58797.**

Missouri Court of Appeals, Western District.

Aug. 7, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2001.

Application for Transfer Denied Nov. 20, 2001.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

. Jeremiah W. (Jay) Nixon, Atty. Gen., Susan L. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

Before SPINDEN, P.J.,
BRECKENRIDGE and HOWARD, JJ.

BRECKENRIDGE, Judge.

Damar West was convicted by a jury of one count of the class C felony of posses-

sion of a controlled substance, cocaine base, § 195.202, RSMo 1994,[1] and one count of the class A misdemeanor of possession of less than 35 grams of marijuana, § 195.202. He was sentenced to terms of one year in prison for possession of a controlled substance, and four months in the county jail for possession of marijuana, to be served concurrently. On appeal, Mr. West challenges the court's overruling of his motion to suppress, claiming that the stop of the vehicle in which Mr. West was riding was illegal because it was made without reasonable suspicion. He claims that the officer did not have "particularized suspicion of criminal activity before the stop, but was attempting to establish that standard after the stop." Second, he claims that the trial court erred in overruling his motion to suppress the evidence of crack cocaine and marijuana because it was obtained as the result of an unlawful search and seizure. This court finds that the stop of the vehicle in which Mr. West was riding was supported by reasonable suspicion and the ensuing frisk of Mr. West was proper. Thus, the trial court did not abuse its discretion in overruling his motion to suppress. Because this court finds that Mr. West's sentence of one year in prison on the controlled substance charge was inconsistent with the trial court's oral pronouncement of a sentence of one year in jail, his sentence on the controlled substance charge is reversed and the cause is remanded for entry of an amended sentence on that charge.

### Factual and Procedural Background

Because the sufficiency of the evidence is not challenged, only a brief recitation of the facts is necessary. On April 2, 1999, Officer Gary Hartman of the Kansas City,

Missouri, police department responded to a 911 call concerning a strong-arm robbery at 4125 Paseo around 4:30 p.m. The victim informed Officer Hartman that two black males in their late teens to early twenties had assaulted and robbed him. One of the suspects was described as approximately five feet seven inches tall, weighing 150 to 160 pounds. The second suspect was described as approximately six feet tall, weighing 200 pounds. The victim told Officer Hartman that the two men ran across the street to a residence at 4128 Paseo. The victim believed that one of the suspects, whom he knew as "Lee," lived at 4144 Paseo. The police then checked both residences, but no one answered when officers knocked.

During the next few days, Officer Hartman conducted surveillance on these two residences to follow-up on his investigation and see if he could identify any of the suspects of the robbery in or around the houses. Four days later, Officer Hartman observed a vehicle parked in the back driveway of the house at 4144 Paseo, which had been "posted" by the police department as a drug house. Officer Hartman initially observed two black males leave the residence and get into the car. Officer Hartman then pulled his vehicle over to wait for the driver to pull away from the residence so that he could stop the vehicle. Shortly thereafter, the vehicle drove past Officer Hartman, who noticed that another black male and a black female had gotten into the backseat of the vehicle. He did not, however, see either of these individuals get into the vehicle. He did observe that the three males "were younger black males fitting the description of late teens to early twenties," which was consistent with the description of the robbery sus-

---

**1.** All statutory references are to the Revised States of Missouri 1994, unless otherwise not- ed.

pects. After the vehicle passed, Officer Hartman pulled out behind the vehicle, called for a second police car to respond, and then stopped the vehicle.

While he was waiting for a backup unit to arrive, Officer Hartman observed Mr. West turn and look back at him. When the backup unit arrived, Officer Hartman approached the vehicle. As he did so, he could smell a strong odor of marijuana coming from the vehicle. Officer Hartman stopped just behind where Mr. West was seated. Officer Hartman noticed that Mr. West appeared nervous. Once backup arrived, Officer Hartman ordered all four persons out of the vehicle and conducted a pat-down frisk. When he frisked Mr. West, Officer Hartman felt what he immediately knew was a plastic baggie containing marijuana. Once the bag was removed from the pocket, a marijuana blunt[2] was also found inside the bag. Mr. West was then arrested. During booking, Officer Hartman also recovered from Mr. West a baggie containing a beige, rock-like substance, later determined to be crack cocaine.

Mr. West was charged with one count of possession of a controlled substance, cocaine base, § 195.202, and one count of possession of less than 35 grams of marijuana, § 195.202. Prior to the presentation of evidence at trial, a hearing was held on Mr. West's motion to suppress. The trial court denied Mr. West's motion. Thereafter, a trial was held at which Mr. West presented no evidence in his defense. The jury convicted Mr. West on both counts and recommended a sentence of one year's imprisonment on the controlled substance charge and four months' imprisonment on the marijuana charge, both to be served in the Jackson County Jail. Following the

recommendation of the jury, the trial court orally pronounced a one-year sentence in the county jail on the controlled substance charge and four months in the county jail on the marijuana charge. The trial court's written sentence and judgment indicated that Mr. West was sentenced to one year in prison on the controlled substance charge and four months in the county jail on the marijuana charge. This appeal follows.

## Standard of Review

 This court's review of a trial court's decision concerning a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." *State v. Tackett,* 12 S.W.3d 332, 336 (Mo.App.2000). The decision of the trial court will be reversed only if it is clearly erroneous and this court is "left with a definite and firm belief a mistake has been made." *State v. Leavitt,* 993 S.W.2d 557, 560 (Mo.App. 1999). This court will view all evidence and any reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *Tackett,* 12 S.W.3d at 336. "In reviewing the trial court's ruling on [a motion to suppress], this [c]ourt considers the record made at the suppression hearing as well as the evidence introduced at trial." *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc), *cert. denied,* 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). While deference is given to the trial court's determination of the credibility of witnesses, " '[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews *de novo*.' " *State v. Pfleiderer,* 8 S.W.3d 249, 253 (Mo.App.1999) (quoting *State v. McFall,* 991 S.W.2d 671, 673 (Mo.App.

---

**2.** A marijuana "blunt" is a hollowed-out cigar in which the tobacco is replaced with marijuana.

1999)). "At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." *State v. Weddle,* 18 S.W.3d 389, 391 (Mo.App.2000).

### Stop of the Vehicle was Proper

In his first point, Mr. West alleges that the trial court erred in overruling his motion to suppress evidence because Officer Hartman did not have reasonable suspicion to stop the vehicle in which Mr. West was riding. Mr. West argues that the basis for stopping the vehicle, that three of the four occupants generally matched the descriptions of the robbery suspects in that they were younger black males, was insufficient to justify the stop. He claims that Officer Hartman's purpose for stopping the car was to see whether the occupants matched the description. This, he asserts, "reveals that the officer did not have particularized suspicion of criminal activity before the stop, but was attempting to establish that standard after the stop."

 The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. *See State v. David,* 13 S.W.3d 308, 311 (Mo.App.2000). "Article I, Section 15 of the Missouri Constitution is coextensive with the Fourth Amendment." *Id.* Under the principles outlined in *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), however, a police officer may make an investigatory stop of a person, in the absence of probable cause, when the officer has a reasonable suspicion that the person is engaged in criminal activity. Such a stop does not violate the Fourth Amendment. *See David,* 13 S.W.3d at 311. Yet "to be consistent with the Fourth Amendment, the police must have a reasonable suspicion that criminal activity is afoot based on [specific and] articulable facts known to the officer making the stop." *State v. Cobb,* 931 S.W.2d 904, 906 (Mo.App.1996) (citing *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884). "In determining whether the seizure and search were unreasonable, the court must determine 'whether the officer's action was justified at the inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Weddle,* 18 S.W.3d at 393 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879). "Constitutionally sound probable cause is not dependent upon the subjective intentions of the officer. 'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' " *State v. Lane,* 937 S.W.2d 721, 723 (Mo. banc 1997) (quoting *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996)).

 The principles of *Terry* have been extended to allow law enforcement officers to "briefly stop a moving automobile upon reasonable suspicion to investigate whether its occupants are involved in criminal activity." *Cobb,* 931 S.W.2d at 906 (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)). Whether "reasonable suspicion" exists depends on the totality of the circumstances. *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992). A suspicion is reasonable when the officer is " 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *State v. Lasley,* 583 S.W.2d 511, 518 (Mo. banc 1979) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct at 1880), *abrogated on other grounds by State v. Grim,* 854 S.W.2d 403, 408 (Mo. banc 1993). *See also State v. Rushing,* 935 S.W.2d 30, 32 (Mo. banc 1996). The standard is "whether the facts available to the

officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." *Lasley,* 583 S.W.2d at 518 (citing *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880). A stop of an individual is also permissible if the officer has a "reasonable suspicion, grounded in specific and articulable facts that a person they encounter was involved or is wanted in connection with a completed felony[.]" *State v. Nelson,* 777 S.W.2d 333, 335 (Mo.App.1989) (citing *U.S. v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985)). Such a stop may be effected to investigate the officer's suspicion. *Id.*

 The resolution of the question of whether or not the officer had a reasonable suspicion that justified an investigatory stop of the vehicle involves a determination of whether or not a person of reasonable caution would believe the action taken was appropriate. *See id.* The action of Officer Hartman meets this test. The specific and articulable facts of the suspects' description were known by the officer as he originally spoke to the victim during the course of the investigation of the robbery and the victim provided this information to him. In addition to the physical description, the victim also told Officer Hartman where he believed one of the suspects lived, which was a few houses down the street. Based on this information, the particular house described by the victim, 4144 Paseo, was under surveillance based on the connection between the robbery and the suspect allegedly living there.

During the afternoon of April 6, 1999, Officer Hartman was conducting surveillance on this house from a half-block away to observe or locate the possible suspect in or around the house. During this time, he observed two individuals in a vehicle leaving the house. He temporarily lost sight of the vehicle, but once the vehicle passed him, he noticed that there were then four persons in the vehicle, three of whom appeared to match the description of the suspects. Officer Hartman was able to point to a majority of the known, observable characteristics of the individuals in the vehicle before the vehicle was stopped. Specifically, he was able to identify the age, race, and gender of the individuals in the car. The only other known characteristics, height and weight, could not be determined as the individuals were inside the vehicle and therefore unavailable for comparison.

Officer Hartman did not stop the vehicle based solely on the description of the suspects, however. The vehicle in which Mr. West was riding was stopped because it was originally parked in the driveway of and had come from the house where one of the suspects allegedly lived. This fact, along with the fact that three of the occupants in the vehicle generally matched the physical description of the suspects, provide a basis for the *Terry* stop in this case. The individuals in the vehicle were the only people Officer Hartman observed in and around the house during his surveillance and those individuals matched the general description of the suspects. *See State v. Fernandez,* 691 S.W.2d 267, 269 (Mo. banc 1985) (where an informant directed police to the location of a crime and the defendant and those accompanying her were the only people in the area at the time, the police were justified in an investigative stop). Seeing the car leave the residence where it was believed that the suspect was staying and occupied by three young black males, Officer Hartman's "suspicions were justifiably aroused." *State v. West,* 766 S.W.2d 103, 107 (Mo. App.1989). Thus, Officer Hartman's "stop of [Mr. West] was legitimate under the guidelines established in *Terry* because of

the combination of facts before [him]." *Id.* At the moment of the seizure, Officer Hartman utilized the specific and articulable facts of age, race, gender, and location available to him from the victim's description which, when taken together with the rational inferences from those facts, made the investigative stop for further identification appropriate. *See Lasley,* 583 S.W.2d at 518.

■ In arguing that the stop was invalid, Mr. West places much emphasis on part of what Officer Hartman said at the suppression hearing and trial, without considering all of the evidence that was presented. Specifically, he states that "Officer Hartman stopped the car to 'identify the persons in the car *to see if they matched the description* ... [of] the strong-arm robbery[.]" What Officer Hartman actually said at the suppression hearing was that he stopped the car "[t]o identify the persons in the car to see if they matched the description *further* [.]" Clearly, Officer Hartman's suspicion was aroused when he observed both that the individuals left the house in which the suspect allegedly lived and that they matched the description of the readily identifiable characteristics of the suspects. The essence of a *Terry* stop is to briefly detain a suspicious individual "in order to determine his identity or to maintain the status quo momentarily while obtaining more information[.]" *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). The evidence supports that this is what Officer Hartman was attempting to do.

■ Mr. West also focuses on Officer Hartman's testimony that Mr. West "possibly fit[ ] the description from the strong-arm robbery[,]" and that "[the occupants of the car] were associated possibly with the strong-arm robbery that occurred." Officer Hartman's use of the word "possi-

bly" at the suppression hearing when referring to whether they fit the description and whether they were, in fact, involved in the robbery, does not vitiate the existence of reasonable suspicion. Reasonable suspicion does not require absolute certainty. In fact, "the level of suspicion [for reasonable suspicion] is less demanding than that for probable cause, which requires a fair probability that contraband or evidence of a crime will be found." *State v. Stevens,* 845 S.W.2d 124, 129 (Mo.App.1993) (internal quotations and citations omitted).

Related to this point, Mr. West focuses on Officer Hartman's statements to suggest that he had no reasonable suspicion prior to the stop and that the stop was effectuated only to develop the reasonable suspicion. In Mr. West's brief, he states that "[i]n fact ... nothing, other than the fact that the three male occupants were young and black, linked them to the prior offense." Mr. West attempts to divert attention from the evidence by suggesting that Officer Hartman was prepared to stop every young, black male that he saw. Mr. West ignores the fact that these individuals were observed in and around the house in which one of the suspects allegedly lived and they matched the description, in part, of the suspects.

Mr. West's argument is similar to one rejected by the Eastern District in *West,* 766 S.W.2d at 105. There, the defendant, who was convicted of seven counts of robbery in the first degree, claimed that "the police stopped him because he was a large black man in a Buick, not because they observed suspicious behavior on his part." *Id.* In finding that the trial court did not abuse its discretion in *West,* the Eastern District noted that (1) for two weeks prior to the stop, a composite photograph and description of the suspected robber had been circulated by police; (2) the description was "of a black male, thirty-five years

old, six-feet-four inches tall, and two hundred seventy-five pounds, muscular built, wearing a red baseball hat and tinted wire-rim glasses[;]" (3) on the night of the last of the seven robberies when the defendant was stopped, an employee of the restaurant robbed gave the police a description of the car the robber was driving ("she saw a dark blue, four-door car, possibly an Impala") and the direction the car was traveling ("turned right onto Fairview towards Grand"). *Id.* Armed with this information, two officers, who were on Grand, observed "a light gray over dark gray Buick Electra proceeding north" driven by "a large black man." *Id.* The court found that the stop of the defendant was "legitimate under the guidelines established in *Terry* because of the combination of facts before them." *Id.* at 107. Specifically, the court noted that the "circulars and announcements heard in the police station for two weeks prior to the [stop] described the robber as a large black man." *Id.* Second, the radio dispatch on the night of the robbery, including the direction the car was driving and "the description of the assailant as a heavy black male," justifiably aroused the officers' suspicions. *Id.*

Here, too, Officer Hartman's suspicions were justified when he stopped the vehicle in which Mr. West was riding. While the stop of Mr. West's vehicle did not occur within close temporal proximity as in *West,* this fact is not fatal. Officer Hartman observed Mr. West, and two of the other occupants of the car at the location of the alleged residence of one of the suspects. This residence was near the robbery location. Finally, the individuals in the car matched the description of young, black males. These combined facts were sufficient to arouse Officer Hartman's suspicion to warrant the stop. Simply because Officer Hartman was not able to determine that Mr. West or the other occupants met the complete description is not enough to find that reasonable suspicion did not exist. In *West,* officers were provided a detailed description of the robbery suspect during the two weeks prior to the stop. *Id.* at 105. There, the officers were apparently only able to determine that the driver of the car they were stopping was a large black man. *Id.* Because this fact combined with the other facts known by the officers was sufficient to establish reasonable suspicion, the stop of the vehicle was upheld. *Id.* at 107. Here, too the combination of facts before Officer Hartman was sufficient to establish reasonable suspicion to justify the stop.

Likewise, the facts in this case are similar to the facts in *U.S. v. Thomas,* 992 F.2d 201, 203 (8th Cir.1993), where the Eighth Circuit upheld the investigatory stop of the driver of a vehicle who drove up to a residence, went inside briefly, and then returned to his car. The particular residence was under surveillance because officers were "attempt[ing] to locate a robbery suspect who frequented the residence." *Id.* The officers, with the help of binoculars,[3] determined that the defendant appeared to match the robbery suspect's description and stopped the car. *Id.* The Eighth Circuit determined that the officers were justified in stopping the car for investigatory reasons because they believed the defendant appeared to. match the description of the robbery suspect and he was observed leaving a residence the suspect was known to frequent, so the officers had a reasonable, articulable suspicion that criminal activity was afoot. *Id.*

Finally, the facts of this case are also similar to *People v. Guffie,* 749 P.2d 976, 980 (Colo.Ct.App.1987). There, two rob-

---

**3.** While binoculars were used to determine whether the suspects met the description in

*Thomas,* 992 F.2d at 203, there was no articulation of the specificity of the description.

beries took place within blocks of each other one evening. *Id.* at 980–81. The two suspects were described by their race, age, height, and clothing, and the description was dispatched over the radio. *Id.* A half an hour after the first robbery and eight minutes after the second, officers arrived in the area and began to investigate. *Id.* at 981. Of the three cars in the vicinity, only one had occupants that appeared to match the characteristics then visible to the officer as reported. These characteristics were race, age, and visible clothing. *Id.* Based on these characteristics, the officer ordered the car to pull over and stop. *Id.* The court determined that the officer did have the reasonable and articulable suspicion necessary to stop the car because the defendant and his passenger generally fit the description given, they were stopped in the vicinity of the reported offenses within a short time frame, and were the only persons matching the description in the area at the time. *Id.* While the time frame in this case is much longer, the location was more particularized than in *Guffie.*

Here, as in *West, Thomas,* and *Guffie,* Officer Hartman was able to point to specific and articulable facts that justified the stop of Mr. West's vehicle based upon the totality of the circumstances. Therefore, the trial court did not err in its denial of the motion to suppress. Mr. West's first point is denied.

### Frisk of Mr. West was Justified

In his second point, Mr. West alleges that the trial court erred in overruling his motion to suppress evidence of crack cocaine and marijuana because it was obtained as the result of an unlawful search

and seizure and, thus, it should have been excluded as fruit of the poisonous tree. Mr. West claims that Officer Hartman did not have a reasonable suspicion under *Terry* to frisk him to determine whether he was carrying a weapon.

■ The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. *See David,* 13 S.W.3d at 311. "Article I, Section 15 of the Missouri Constitution is coextensive with the Fourth Amendment." *Id.* "The burden of showing justification for a warrantless search rests with the state." *Id.* (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

■ "Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed." *Rushing,* 935 S.W.2d at 32. " 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.]' " *Id.* (quoting *Adams,* 407 U.S. at 146, 92 S.Ct. at 1923). "[I]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." [4] *State v. Davis,* 985 S.W.2d 876, 877 (Mo. App.1998) (quoting *Minnesota v. Dickerson,* 508 U.S. 366, 375–76, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993)).

---

4. Under the plain view doctrine, if police officers are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to it, they may seize it without a warrant. *Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130.

■ Here, Officer Hartman frisked Mr. West in order to pursue his investigation without fear of violence. *Rushing*, 935 S.W.2d at 32. The vehicle was stopped based upon Officer Hartman's reasonable suspicion that the suspect, or suspects, of the assault and robbery was an occupant of the vehicle. Additionally, the actions of Mr. West further supported a determination that the frisk was necessary for the officer's safety. Before approaching the vehicle, Mr. West physically turned around to look and see what was behind him. This caught Officer Hartman's attention and, upon reaching the car, he stood slightly behind the driver and next to Mr. West, who was seated in the back behind the driver. At this time, Officer Hartman smelled a strong odor of marijuana emanating from the open windows of the car, particularly from where Mr. West was seated. While waiting for backup to arrive, Officer Hartman obtained the driver's identification and observed that Mr. West appeared nervous and was trembling, again catching the officer's attention.

After backup arrived, Officer Hartman ordered all four of the individuals out of the car to be frisked for weapons. Officer Hartman believed the frisk for weapons was necessary for the safety of the officers because at least one of the individuals in the car could have been a suspect from the assault and robbery and the car had just left a known drug house. He believed that in either situation there was a possibility that weapons were involved.

Following the valid stop of the vehicle, Officer Hartman frisked the outer clothing of Mr. West because of the officer's reasonable, particularized suspicion that Mr. West could have been armed. Officer Hartman did this not to discover evidence of marijuana, but to allow him to pursue the investigation without fear for his safety. Once he lawfully patted down Mr.

West's clothing and felt an object with a contour he knew immediately to be marijuana, the seizure was justified by the same practical considerations as the plain view doctrine. *Davis*, 985 S.W.2d at 877. Consequently, the trial court did not err in overruling Mr. West's motion to suppress evidence. In addition to the justified pat-down of Mr. West's clothing based upon his suspicion that Mr. West may be armed, Officer Hartman also had probable cause to search Mr. West after he detected the odor of marijuana emanating from the legitimately-stopped vehicle. *See State v. McNaughton*, 924 S.W.2d 517, 524 (Mo. App.1996) (holding that "[w]here there is a legitimate reason to stop a car and the officer thereafter detects the odor of marijuana, an ensuing search is based on probable cause"). Mr. West's second point is denied. Because Mr. West fails to prove error in his conviction, it is affirmed.

### Written Sentence Inconsistent with Oral Pronouncement

■ Finally, a review of the transcript and legal file reveals a disparity in sentencing on the controlled substance charge. The jury recommended, and the trial court orally pronounced, a one-year sentence in the county jail. Nevertheless, in its written judgment, the trial court sentenced Mr. West to one year in prison for the controlled substance offense. Generally, the trial court's written sentence and judgment must be entered as orally pronounced. *State v. Patterson*, 959 S.W.2d 940, 941 (Mo.App.1998). Although there are exceptions to the general rule if the oral sentence was not "materially different from the written one" or the trial court had "no discretion to pronounce a sentence different from the written sentence," *Johnson v. State*, 938 S.W.2d 264, 265 (Mo. banc 1997), the exceptions do not apply in this case.

Mr. West concedes that this issue was not raised on appeal. Nevertheless, the State acknowledges that the written sentence of one year in the Department of Corrections is materially different from the oral sentence of one year in the county jail, and does not object to Mr. West's request that the sentence on the controlled substance charge be reversed and the cause remanded for entry of a corrected written sentence and judgment which conforms to the oral pronouncement of sentence.

Accordingly, the judgment of conviction is affirmed and Mr. West's sentence of one year in prison on the controlled substance charge is reversed. The cause is remanded to the trial court for the sole purpose of entry of an amended sentence which is consistent with the oral pronouncement of one year in the county jail.

All concur.