**STATE of Missouri, Respondent,**

v.

**James SCOTT, Appellant.**

No. 74697.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 8, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Jefferson City, for respondent.

CRAHAN, Judge.

James Scott, ("Defendant") appeals the trial court's judgment entered upon his conviction by a jury of causing a catastrophe, Section 569.070 RSMo 1986,[1] for which he was sentenced as a prior and persistent offender to life imprisonment in the custody of the Department of Corrections. We affirm.

During the flood of 1993, the Mississippi River crested at 32 feet on July 13 at the West Quincy levee. By July 16, the river had fallen 6 inches and the levee was in excellent condition. That night the levee broke.

Before the levee broke, Defendant told several people that he wished the levee would break so his wife would be stuck on the other side. He said he hated his wife and he wanted to party. Defendant also said the fishing would be better if the levee broke. Defendant's half-brother tried several times to dissuade him from breaking the levee.

On the night of the levee break, Defendant parked his car on the highway near its intersection with the levee. Defendant admitted to an acquaintance that he went to the levee and dug into it with a shovel until it broke. Defendant might have escaped unnoticed but he lost his car keys and was unable to leave the scene. After the break, Defendant told a friend, "I told you I was going to do it and now it's done."

■ On appeal from a judgment in a jury-tried criminal case, this court determines whether there is sufficient evidence from which the jury could have reasonably found guilt. *State v. Karr*, 968 S.W.2d

712, 715 (Mo.App.1998). A person commits the crime of causing a catastrophe if he knowingly causes a catastrophe by ... flood .... Section 569.070.1. "Catastrophe" means death or serious physical injury to ten or more people or substantial damage to five or more buildings or inhabitable structures or substantial damage to a vital public facility which seriously impairs its usefulness or operation. Section 569.070.2. Defendant does not contend that there was insufficient evidence to support a finding that the levee break resulted in a "catastrophe."

■ In his first point, Defendant claims the trial court erred in overruling his motions for judgment of acquittal at the close of the state's case and at the close of all the evidence. Defendant maintains that his admissions of guilt were improperly admitted because the state failed to prove an element of the corpus delicti, that the levee broke as a result of criminal rather than natural forces. Defendant then argues that without those admissions there was insufficient evidence to convince a rational trier of fact of his guilt beyond a reasonable doubt, and therefore his conviction violated the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Missouri Constitution. We disagree.

■ The corpus delicti consists of two elements: "(1) proof, direct or circumstantial, that the specific loss or injury charged occurred,[2] and (2) *someone's* criminality as the cause of the loss or injury." *State v. Ziegler*, 719 S.W.2d 951, 954 (Mo.App. 1986), quoting *State v. Johnston*, 670 S.W.2d 552, 554 (Mo.App.1984). (Emphasis added by court in *Ziegler*).

'Unless there is independent proof, either circumstantial or direct, of the essential elements of the corpus delicti, extra-judicial admissions, statements or confessions of the accused are not ad-

---

1. All further statutory references are to RSMo 1986.

2. Defendant does not dispute that specific loss or injury occurred as a result of the levee's break.

missible in evidence, and where improperly admitted are insufficient to sustain a conviction.' *State v. Summers*, 362 S.W.2d 537, 542 (Mo.1962). '... [T]his rule does not require full proof of the body of the offense, independent of the confession. If there is evidence of corroborating circumstances independent of the confession, which tends to prove the offense by confirming matters related in the confession, both the corroborating circumstances and the confession may be considered in determining whether or not the corpus delicti has been established.' *City of St. Louis v. Watters*, 289 S.W.2d 444, 446 (Mo.App.1956).

*State v. White*, 552 S.W.2d 33, 34 (Mo.App. 1977).

Four expert witnesses testified that the levee was sabotaged and did not fail from natural causes. The levee was "rock solid" when it was patrolled less than two hours before the break. Two people saw a person alone at the levee at the time of the break, and no one was ever sent to work on the levee alone. Defendant's car was observed parked on the highway near the intersection with the levee. This corroborating evidence tended to prove the offense by confirming matters related in Defendant's extra-judicial statements. Accordingly, both the corroborating circumstances and Defendant's incriminating statements were properly considered in determining whether the corpus delicti was established. Those corroborating circumstances and Defendant's statements were sufficient to support a finding that the levee was broken by someone's criminal act, thus establishing the corpus delicti. Further, there was sufficient evidence from which rational jurors could have found beyond a reasonable doubt that Defendant was guilty of causing a catastrophe. Point denied.

■ In his second point, Defendant argues that the trial court erred in admitting the opinions of Norman Haerr and Robert Hoffmeister that the levee was sabotaged and did not fail as a result of natural causes. Defendant complains that

their opinions constituted impermissible lay opinion testimony. The test of an expert's qualification is whether the expert has knowledge from education or experience which will aid the trier of fact. *State v. Seddens*, 878 S.W.2d 89, 92 (Mo.App. E.D.1994), citing *State v. Mallett*, 732 S.W.2d 527, 537 (Mo. banc 1987). The qualification of an expert is a matter resting primarily in the sound discretion of the trial court. *Id.*

Both witnesses had knowledge based on their experience working on the West Quincy levee which aided the trier of fact in understanding the cause of the West Quincy levee break. Haerr spent twenty-five years as a commissioner on the Fabius River Drainage District Board which maintained the West Quincy levee. He had experience with the floods in that area in 1960 and 1973. He was trained to deal with levees by the Army Corps of Engineers. He was aware of the levee's condition on the day it broke. Hoffmeister spent forty years working on the West Quincy levee, including during the flood years of 1960, 1965, 1973 and 1993. He helped construct some of the improvements to the West Quincy levee. He was the last person to patrol the levee the day of the breach, and he knew its condition as of an hour before the break. The trial court did not abuse its discretion in determining that Haerr and Hoffmeister were qualified to testify as experts on the cause of the failure of the West Quincy levee. Further, even if this had been an abuse of discretion, Defendant suffered no prejudice as similar evidence was admitted elsewhere in the case by two other experts, Mr. Bawman, and Mr. Klingner. *State v. Ervin*, 979 S.W.2d 149, 163 (Mo. banc 1998) (citations omitted). Point denied.

■ In his third point, Defendant argues that the trial court abused its discretion in overruling his timely request for a mistrial after a witness for the state, on cross-examination, volunteered information about an uncharged crime when he said,

"[w]e went back to the purse snatching...." We disagree.

■ It is not uncommon for witnesses to unexpectedly volunteer inadmissible statements. *State v. Silas*, 885 S.W.2d 716, 720 (Mo.App.1994), citing *State v. Brasher*, 867 S.W.2d 565, 569 (Mo. App.1993). When that occurs at trial, the action called for rests within the trial court's sound discretion. *Id.* Mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is grievous error which cannot otherwise be remedied. *State v. Sanders*, 903 S.W.2d 234, 238 (Mo.App.1995) (citations omitted).

■ In analyzing the prejudicial effect of uninvited reference to other crimes evidence, Missouri courts generally examine five factors:

1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning if the prosecutor asked the question or whether the prosecution deliberately attempted to elicit the comments; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained defense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether in view of the other evidence presented and the strength of the state's case, it appeared that the comment played a decisive role in the determination of guilt.

*State v. Smith*, 934 S.W.2d 318, 320 (Mo. App.1996), quoting *State v. Silas*, 885 S.W.2d 716, 720 (Mo.App.1994).

Applying these factors, the trial court did not abuse its discretion in denying the request for mistrial. While Defendant's counsel was questioning the witness, the following occurred:

Q: You began questioning [Defendant] about one o'clock in the afternoon on October 1st, right?

A: Yes, sir.

Q: And your brother Bruce Baker was there at the time, right?

A: Yes, he was.

Q: Starting at one o'clock you were talking to James about some other things?

A: That's correct.

Q: And then your brother Bruce left about twenty after one?

A: Yes, he did.

Q: Came back about 3:30?

A: Yes.

Q: Started talking to [Defendant] about the levee failure about – about three and a half hours after you had been talking to him about other things?

A: Yes. We started talking to him at around one and we didn't start talking about the levee until about five. So, yes, three and a half, four hours.

Q: Okay. And how long did you – when you started talking to him about the levee at 4:30, how long did you talk to him about the levee?

A: Initially just – altogether I would say probably thirty-five minutes or so.

Q: So then about a little bit after five you started talking to him about other things, right?

A: Started talking to him about other things?

Q: Yes.

A: No. At 4:53 we started talking to him about the levee.

Q: Okay. Talked – talked to him for about thirty-five minutes, right?

A: Well, it stopped because he said he already told us – or he had already talked about it.

Q: Okay.

A: We went back to the purse snatching, talked about –

At that point Defendant objected and moved for a mistrial. The state did not ask the question that elicited the response. Defendant's counsel asked the question.

The statement was singular and isolated, and the state did not emphasize or magnify it. The remark was vague and indefinite, and did not indicate whether Defendant had committed a crime. The trial court sustained Defendant's objection and instructed the jury to disregard before the cross-examination resumed. Finally, in view of the ample evidence of Defendant's guilt in the form of his own admissions, the statement did not appear to play a decisive role in the determination of guilt. Point denied.

The judgment is affirmed.

JAMES R. DOWD, P.J., Concurs

RICHARD B. TEITELMAN, J., Concurs