Clifford M. TAYLOR, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 66345.

Missouri Court of Appeals, Western District.

July 24, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2007.

Application for Transfer Denied Oct. 30, 2007.

S. Kate Webber, Appellate Public Defender, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Roger W. Johnson, Asst. Attorney General, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and JOHN MORAN, Sp.J.

PER CURIAM.

Clifford Taylor appeals the denial of his motion for post-conviction relief based on Rule 29.15 and the assertion that he received ineffective assistance of appellate counsel. Because we determine that the motion court clearly erred, we reverse the denial of relief.

## Background

Around 3:45 p.m. on August 23, 2001, Officer Paul Luster and Officer Michael Eickmann were on patrol in Kansas City. As the officers crested a hill, they noticed a man walking in the middle of the street. Under Kansas City ordinance 70–786, walking in the street, where a sidewalk has been provided, is a traffic violation. The officers had decided to regard the area in question as a "zero tolerance enforcement zone." The officers exercised their authority to stop and cite the individual for violation of the city ordinance against jaywalking.

The officers pulled up behind the man in their patrol car. When the man turned around, Officer Luster recognized him as Taylor, with whom he had dealt on many previous occasions. Officer Luster knew Taylor to have a criminal record and a history as a narcotics user. Officer Luster had previously frisked Taylor on many occasions—"more than fifty times," he testified—and had never found a weapon on Taylor.

The officers got out and stopped Taylor for the traffic violation. Instead of issuing a citation for jaywalking, the officers ordered Taylor to place his hands on the police car so that they could frisk him for weapons and sharp objects. Taylor complied. Before Officer Eickmann carried out the frisk, he asked Taylor if he had any weapons or sharp objects on his person. Taylor responded that he was a "user" and had a crack pipe in the front pocket of his pants. Officer Eickmann retrieved the pipe, and the officers placed Taylor under arrest for possession of drug paraphernalia. Taylor was then transported to the police station.

During an inventory search at the police station, Officer Eickmann found what he believed to be a small rock of crack cocaine in a plastic bag inside Taylor's shoe. Officer Eickmann immediately had the substance field tested by the sergeant in charge. The substance tested positive for the presence of cocaine. Subsequent testing at the police crime lab confirmed that the substance contained cocaine.

Taylor was charged with one count of possession of a controlled substance under section 195.202. Prior to trial and at trial, defense counsel objected to the use of the rock of crack cocaine and testimony related to the rock. Counsel argued that the evidence should have been suppressed as the fruit of an unreasonable search in violation of the Fourth Amendment in that Officer Eickmann did not have a reasonable suspicion to believe that his or Officer Luster's safety was endangered when they stopped Taylor for jaywalking, and subjected him to a frisk. This objection was overruled. The evidence was admitted.

After a jury trial, Taylor was convicted of possession of a controlled substance. In the motion for new trial, counsel preserved the argument that the rock of crack cocaine and testimony relating to it should have been suppressed as fruit of the Fourth Amendment violation.

Taylor brought a direct appeal to this court. Taylor's counsel on appeal, after considering the Fourth Amendment issue and a separate claim of error related to a failure to declare a mistrial, elected not to pursue the Fourth Amendment issue. Appellate counsel contended on appeal that the trial court erred in refusing to declare a mistrial when, after the court had granted a motion *in limine* (to exclude evidence of Taylor's prior arrests), one of the officers, apparently inadvertently, referred to the fact that Taylor had prior arrests. The testimony at trial was:

Q. And when you [stopped Taylor], what happened then?

A. At that time my partner recognized him from past arrests.

Defense counsel asked for a mistrial, contending that the reference to past arrests was "incredibly inflammatory and prejudicial." The trial court denied the motion for mistrial, but offered a curative instruction, which the defense declined. The mistrial issue was the only issue brought to the attention of this court on direct appeal.

This court, in Taylor's direct appeal, looked at the five factors discussed in *State v. Scott,* 996 S.W.2d 745, 749 (Mo.App. 1999), in trying to determine whether the reference to past arrests was so inflammatory and prejudicial that the trial court erred in failing to grant the mistrial. Those factors include (1) whether the statement was volunteered and non-responsive to the prosecution's questioning; (2) whether the statement was isolated, or whether emphasized; (3) whether the reference was vague, or made reference to a specific crime; (4) whether the court sustained the objection and offered to instruct the jury to disregard the remark; and (5) whether the statement played a decisive role in the conviction. *Id.* In looking at the fifth factor, the court noted the "strong evidence" of Mr. Taylor's guilt in view of the crack cocaine found in his shoe after Taylor admitted being a "user" and directed the officers to the paraphernalia in his pocket. Thus, the court concluded, the comment could not have played a decisive role in the jury's verdict. The court also considered the fact that the comment was apparently inadvertent, was vague, and was not emphasized by the prosecution, and the fact that the court offered the defense a curative instruction. In a summary order, this court affirmed Taylor's conviction. *State v. Taylor,* 128 S.W.3d 919 (Mo.App.2004).

Taylor timely filed a *pro se* motion to vacate, set aside, or correct the judgment and sentence based on Rule 29.15. Appointed counsel timely filed an amended motion contending, *inter alia,* that appellate counsel was ineffective for failing to raise the issue of the admission of the rock of crack cocaine and testimony related to it. The motion court held an evidentiary hearing. The motion court issued findings of fact, conclusions of law and judgment denying Taylor's request for post-conviction relief.

Taylor now appeals that judgment to this court.

## Standard of Review

Review of the motion court's judgment under Rule 29.15 is limited to a determination of whether the findings and conclusions are clearly erroneous. Rule 29.15(k); *Tisius v. State,* 183 S.W.3d 207, 212 (Mo. banc 2006). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with a definite and firm impression that a mistake has been made. *Tisius,* 183 S.W.3d at 212.

In order to prevail on a claim of ineffective assistance of counsel, Taylor must satisfy the two-prong test of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Johnson v. State,* 189 S.W.3d 640, 644 (Mo.App.2006). This requires Taylor to show first that counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. He must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. This court is required to indulge a presumption that counsel's performance fell within the range of reasonable professional assistance and that the challenged action might be considered reasonable strategy. *Id.* at 689, 104 S.Ct. 2052. "[T]he movant has a heavy burden to overcome the presump-

tion that counsel was competent." *Johnson*, 189 S.W.3d at 645. In a case where the claim is ineffective assistance of appellate counsel, the movant must show "that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Tisius*, 183 S.W.3d at 215.

Secondly, Taylor must show that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. Where the claim is ineffective assistance of appellate counsel, this requires a showing that the claimed error was sufficiently serious to create a reasonable probability that, if it had been raised on appeal, the outcome of the appeal would have been different. *Tisius*, 183 S.W.3d at 215. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. If Taylor fails to satisfy either prong, we need not consider the other; his claim must fail. *Johnson*, 189 S.W.3d at 644.

The inquiry into whether appellate counsel was deficient and the inquiry into whether this deficiency prejudiced the movant are intertwined. Counsel does not have a duty to raise every issue asserted in the motion for new trial and no duty to present non-frivolous issues where she decides strategically to winnow out arguments in favor of other arguments. *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005). For this reason,

> [t]o support a Rule 29.15 motion due to ineffective assistance of appellate counsel, strong ground must exist showing that counsel failed to assert a claim of error which *would have required reversal* had it been asserted and which was

> *so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.* The right to relief due to ineffective assistance of appellate counsel inevitably tracks the plain error rule, i.e., the error that was not raised on appeal was so substantial as to amount to a manifest injustice or a miscarriage of justice. (Emphasis added.)

*Moss v. State*, 10 S.W.3d 508, 514–15 (Mo. banc 2000) (*quoting Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994)).

## Analysis

Taylor contends that the motion court clearly erred in denying relief because appellate counsel's performance was constitutionally deficient in that counsel did not appeal the trial court's ruling admitting the drug evidence, which was seized in violation of the Fourth Amendment because the arrest, search, and interrogation of Mr. Taylor exceeded the lawful scope of the stop.

The Fourth Amendment of the United States Constitution guarantees that the people are protected from unreasonable searches and seizures. *See* U.S. CONST. amend. IV. The Missouri Constitution, article I, section 15, is this state's guarantee against unreasonable searches and seizures and is co-extensive with the Fourth Amendment. *State v. Mondaine*, 178 S.W.3d 584, 589 (Mo.App.2005). Thus, the protection afforded by the Missouri Constitution is the same as that afforded by the U.S. Constitution and the analysis is the same for both. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005).

Taylor contends that the frisk was an illegal search, and, thus, the evidence flowing from it should have been suppressed. He contends that the officers did not have a reasonable basis for frisking him. He contends that the officers had only the

right to detain him long enough to cite him for the ordinance violation of jaywalking.

■ In the case of a traffic violation, the police may detain a suspect only long enough to conduct a reasonable investigation of the traffic violation. *State v. Granado*, 148 S.W.3d 309, 311 (Mo. banc 2004). After any investigation, police are required to let the suspect go without further questioning or detention unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. *Id.* When it comes to issuing a citation for jaywalking, officers can ascertain the identity of the individual and issue a citation, and then let the individual go. *See id.* The officers already had probable cause for the citation. There was no need for further investigation of the individual. There cannot be reason to frisk an individual for weapons unless there is reasonable suspicion of a more serious violation, or there are factors giving reason to believe that failure to frisk would put at risk their safety or that of someone else. *See id.*

Because the stop for the traffic violation and the stop to frisk Taylor were one and the same, the justification for the frisk must have been apparent to the officers before they frisked Taylor. This is because an officer's action must be justifiable at its inception. *State v. David*, 13 S.W.3d 308, 311 (Mo.App.2000). Any facts discovered *after* officers had made clear that they were going to frisk Taylor, while Taylor was against the police car, such as his statement about being a user and having a pipe and the discovery of the pipe and the rock, cannot be considered in the analysis as to whether the frisk itself was reasonable.

■ When a citizen, in response to the fact that there is going to be a search, submits to the apparent show of authority, the disclosure is involuntary within the Fourth Amendment context. *See California v. Hodari D.*, 499 U.S. 621, 628–29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *State v. Talbert*, 873 S.W.2d 321, 324 (Mo.App. 1994) (mere submission to a claim of lawful authority is not consent).

The State contends that the officers had reasonable grounds for the frisk, because Officer Luster was familiar with Taylor as a drug dealer and as a person with a criminal record. That argument is undermined here, because Officer Luster testified at the suppression hearing that he had previously frisked Taylor "more than fifty times" and had never found a weapon on Taylor. Luster gave no indication that Taylor had been violent in any way in any of his prior contacts with Taylor. There was also no testimony that Taylor at any time made any movements that might suggest that he was armed and dangerous. There also was no testimony or evidence of any kind that Taylor was on probation or parole and had impliedly consented, as a matter of law, to be searched.

Although officers may conduct a "pat down" for weapons if they could reasonably conclude that the person with whom they are dealing "may be armed and presently dangerous," *State v. Goff*, 129 S.W.3d 857, 864–65 (Mo. banc 2004), here, the evidence of the reasonableness of the frisk was weak. The State fails to offer any reason to believe that Taylor was more dangerous to these two officers at this time than at any of the other times officers had encountered him in the past.

■ Knowledge of a person's prior drug involvement, by itself, is insufficient to give rise to reasonable suspicion such that it is appropriate to search the person when two officers are issuing a traffic citation. *State v. Hawkins*, 137 S.W.3d 549, 558 (Mo.App.2004). Also, suspicion that a person may have been associated with other past criminal activity, by itself, is insuf-

ficient. *Id.* A person's presence in a high-crime neighborhood where drug deals are known to take place is also, by itself, insufficient to amount to reasonable suspicion that the person may present a risk to officers who wish to cite the person for a traffic violation. *Id.* at 557–58.

■ The officers were not required to ignore the fact that Taylor had a previous record, was in a high crime neighborhood, and was known to use and deal drugs. But these factors simply are not enough *in themselves* to warrant a frisk when citing an individual for a traffic infraction. Here, the person being stopped was well known and had proven time and time again that he was not armed, and there was no indication that he had ever presented a threat to officers. There also was not a particular reason, beyond the fact that he had a history as a drug user, to believe that he might physically resist a citation for jaywalking.

In *Hawkins,* the suspect was in an area known for drugs. 137 S.W.3d at 557–58. The suspect had *just finished* involvement in a hand-to-hand transaction that the officer believed, based on his experience, to be a drug transaction. *Id.* at 558. In that case, the officer's stop and frisk of the suspect was held justified. There, the officer had reason to frisk for evidence of the crime as well as for weapons. *See also United States v. Pratt,* 355 F.3d 1119, 1120 (8th Cir.2004) (officers intended to cite subject for jaywalking; dispatch warned officers that subject had been armed in prior police encounters; subject jogged away to avoid them and spit something from his mouth; officer's frisk was upheld as valid). *See also State v. Deck,* 994 S.W.2d 527, 535 (Mo. banc 1999) (officer approached car driven without lights late at night in residential area; officer had been warned by dispatcher as to description of car and that driver could be considered "armed and dangerous"; driver

reached for or concealed something as officer approached; court held that officer's protective sweep of passenger compartment and pat-down of driver were reasonable). In the present case, in contrast, there was no evidence of any law violation (other than the traffic violation) in process. There was no warning that he was believed to be armed and no history of being armed.

There is no argument or evidence that drug sellers routinely or generally walk in the street as a way of advertising their wares. If that were so, there might be an argument that the jaywalking might in fact contribute something to the notion that Taylor's actions together with his drug history tend to indicate something approaching probable cause to believe criminal activity (*i.e.,* possession of contraband with intent to sell) was taking place. Here, there is no such evidence or argument. In fact, the police relied specifically on the fact that they had decided the area in question was a "zero tolerance zone" as the basis of enforcing the traffic infraction against Taylor. There is thus no reason to conclude that Taylor's jaywalking equates to an act creating a reasonable suspicion of criminal activity.

### Not a *Terry* Case

■ It is possible here, as apparently occurred with Taylor's appellate counsel, to fail to recognize the significant distinction between this case and a *Terry* case, which necessarily involves a reasonable suspicion of criminal activity. *See United States v. Childs,* 277 F.3d 947, 952–53 (7th Cir.2002) (en banc) (traffic stops based on probable cause are not *Terry* stops). Nothing about the act of jaywalking suggests that a subject must be investigated for criminal activity, or may be armed and dangerous. "A traffic stop is not investigative; it is a form of arrest, based upon probable cause that a penal law has been violated." *United States v. $404,905.00 in*

*U.S. Currency,* 182 F.3d 643, 648 (8th Cir. 1999).

At the 29.15 hearing, Taylor's appellate counsel stated that, "based on a *Terry* stop that you can at least stop and question somebody, I thought that, you know, it looked like he was—he's being stopped, then he volunteered he had the crack pipe." Counsel said, "I just couldn't see where I could make an argument." It is not really clear why counsel thought there was no argument here. Perhaps counsel erroneously thought that jaywalking, a traffic violation, constituted "criminal activity" warranting an investigation and a concomitant frisk. Perhaps more likely, counsel overlooked the fact that the record makes clear that the officers had *already* informed Taylor they were going to frisk him, and had him up against the police car, with his hands on the police car, when Taylor "volunteered" the information. Whatever the case, the comments of counsel suggest that because Taylor indicated to officers (after they ordered a frisk) that he had a crack pipe, counsel decided there was no argument to be made.

Although counsel was an experienced and able appellate attorney, this decision was seriously and uncharacteristically faulty, and beneath the level of expertise expected from a reasonably competent attorney. Both logic and law would indicate that the justification for the stop and frisk had to exist *before* the frisk was ordered and Taylor acknowledged having the crack pipe. *See David,* 13 S.W.3d at 311. Because Taylor volunteered the crack pipe only after the police ordered the frisk, the admissibility of the evidence would rise or fall according to the reasonableness of the frisk under the circumstances.

The issue counsel did appeal, the failure to declare a mistrial when the officer mentioned his familiarity with Taylor from prior arrests, could not have secured an end to the prosecution. The only possible remedy would have been a new trial. However, the State had already, in securing the admission of the evidence, succeeded in proving beyond reasonable doubt that Taylor was in fact guilty of possessing the contraband. Taylor's only defense was a constitutional defense based on a claim of unreasonable search and seizure. There was no alibi, and no case of possible mistaken identity, or other factual defense. He might as well have pleaded guilty, if the constitutional issue were to be waived. The reason for a trial would have been to preserve his arguments as to the validity of the frisk. Taylor's only viable defense strategy, properly preserved at trial, was waived when it was not asserted on appeal.

A successful appeal on the issue of the lawfulness of the frisk would have effectively excluded all physical evidence and all statements made by Taylor once he was impermissibly seized. A successful appeal of that issue would have left the prosecution with nothing to prosecute and, thus, would have resulted in the dismissal of the charge and the discharge of Taylor.

Strategic choices made after a reasonably thorough investigation of the law and the facts are generally virtually unchallengeable. *Storey,* 175 S.W.3d at 125. Here, though, there are some glaring deficiencies. It appears that counsel failed to take careful note of the facts. It also appears that counsel failed to make a reasonably thorough investigation of the law. Counsel believed this was a *Terry* stop case, and did not indicate ever investigating the law regarding the issue of whether the frisk, not being justified under *Terry,* could be attacked as not justified by safety concerns. Giving counsel the benefit of the doubt, it is possible that counsel assumed that Officer Luster's belief (mentioned at the suppression hearing) that Taylor may have at some time been associated with an armed robbery justified the officer's purported safety concerns, though

counsel did not mention that at the post-conviction hearing.[1] Even assuming good faith in Officer Luster's assertion at the hearing as to Taylor's alleged association with an armed robbery, we still have balanced against that the fact that Officer Luster had searched Taylor many times, "more than fifty times," and had never found Taylor to be armed or dangerous. Officer Luster provided no explanation or context for understanding the surprising testimony that he had searched Taylor more than fifty times. Suffice to say that the two men were acquainted with each other. In any event, in the particular circumstances here, it is difficult to see the constitutional reasonableness of the frisk in connection with the issuance of a citation for jaywalking. Taylor's history was not shown to be such that, *by his mere presence*, he inherently presented "walking suspicion" of carrying weaponry justifying a frisk for safety reasons. Because of the peaceful nature of his many previous encounters with Officer Luster, the State failed to show that the frisk was justified in connection with the citation issuance based on safety concerns. Thus, we conclude that the trial court erred in admitting the evidence, and that such ruling created a meritorious issue for appeal.

The arguments challenging the frisk had been properly made and preserved by the trial defense counsel. Proper legal authority was cited at trial. A careful reading of the transcript could have directed appellate counsel to the arguments and authorities raised in the trial court. For the reasons indicated, we conclude that reasonably competent pursuit of the Fourth Amendment issue on appeal would have resulted in a reversal of conviction.

The issue here is not whether an innocent man was convicted. Taylor makes no pretense of such. The right to effective assistance of counsel is concerned not only with protecting the rights of the innocent, but also with the protection of basic rights guaranteed to all by the Missouri and the U.S. constitutions. We conclude that Taylor's rights were not adequately protected by counsel, and that the motion court clearly erred in denying the motion for post-conviction relief. We reverse the denial of post-conviction relief and remand to the circuit court for the court to vacate the conviction and to order the evidence suppressed.

---

1. The record discloses no indication Taylor had *in fact* ever been arrested or convicted of armed robbery or of any crime involving a weapon. Both the motion court and the State have stressed, in seeking to justify the frisk, that defendant had a criminal record, but have failed to delineate any substantive indication other than that he was a user and seller of drugs.